NATIONAL LABOR RELATIONS BOARD
v. A. J. TOWER CO.
No. 4099.

Circuit Court of Appeals, First Circuit.
Dec. 13, 1945.

Before MAHONEY, WOODBURY, and ALBERT LEE STEPHENS (special assignment), Circuit Judges.

Louis Libbin, of Washington, D. C. (Malcolm F. Halliday, Associate Gen. Counsel, Alvin J. Rockwell, Gen. Counsel, and Ida Klaus and Emily Cronheim, Attys., National Labor Relations Board, all of Washington, D. C., of counsel), for petitioner.

John T. Noonan, of Boston, Mass. (Edward E. Elder, of Boston, Mass., of counsel), for respondent.

MAHONEY, Circuit Judge.

This case comes before us on petition of the National Labor Relations Board, hereinafter referred to as the Board, for enforcement of its order issued against A. J. Tower Company, hereinafter referred to as the Company, pursuant to § 10(c) of the National Labor Relations Act, 49 Stat. 453, 29 U.S.C.A. § 160(c), requiring the respondent to cease and desist from refusing to bargain with Local No. 24, Waterproof Garment Workers Union, affiliated with the International Ladies Garment Workers Union (A. F. of L.), hereinafter referred to as the Union, "as the exclusive representative of all the employees of the respondent at its Roxbury, Massachusetts, plant * * *."

On April 27, 1944, the Company and the Union executed an agreement for a consent election. In accordance with the agreement the Company furnished the Regional Director of the Board, who was to conduct the election, with its payroll list for April 21, 1944, the payroll date contained in the agreement for the determination of eligible voters. Included in this list was the name of Jennie A. Kane with the notation that she was "Out Sick." There was evidence to the effect that this employee had last worked for the Company on March 24th and had not entered the plant from then until May 5, 1944, the date of the election, at which time she voted. Although the Company had observers present at the polls for the purpose of challenging questionable voters, her vote was not challenged and her ballot was commingled with the others.

When the payroll list was furnished the Company officials had no knowledge that Mrs. Kane had severed her employment but believed that her absence from work was due to illness. The Company was still under that belief at the time of the election and for that reason did not challenge her vote. After the election a "Certification on Conduct of Election" was signed by representatives of the Company, the Union and the Board, certifying that the balloting had been held, that it was fairly conducted, and that all eligible voters were given an opportunity to cast their ballots secretly. The tabulation of the ballots disclosed that 231 votes were cast, 116 being cast for the Union and 114 against it and one ballot had been challenged by the Union. The Board's Regional Director certified that a majority of ballots had been cast for the Union and that there were not challenges sufficient in number to affect the result of the election, so that it was unnecessary to consider the validity of the ballot challenged by the Union. Hence on this appeal we must assume that the last mentioned ballot was a valid vote and that it was cast against the Union. Thus, for our pur-

poses, the total vote against the Union was 115, the total vote for the Union 116, of which Mrs. Kane's vote is one. And so, if Mrs. Kane was not eligible to vote the result might have been a tie. Although there is no reliable method of determining for whom Mrs. Kane voted, since her ballot was commingled with the other 230 ballots, we must assume that she voted for the Union. In fact, there was evidence to that effect.

Evidence before the Trial Examiner showed that the Company officials, within a few days after the election, learned that Mrs. Kane had applied for unemployment benefits and that the Company's files contained a notice from the Division of Employment Security for the Commonwealth of Massachusetts stating that Mrs. Kane had applied for unemployment benefits on April 28, 1944, and gave the date of the severance of her employment with the Company as March, 1944. This was the first time the notice had come to the attention of a supervisory official of the Company. The Company on May 9th filed with the Regional Director an objection to his basing any determination of representatives upon Mrs. Kane's ballot since she was not an employee at the time she voted.

The Regional Director filed a report on these objections but did not make a finding as to whether Mrs. Kane was an employee at the time she voted and held that the Company could not challenge her vote after the election since the consent election agreement provided for the challenging of the eligibility of individual voters only at the time of the balloting. The Regional Director then certified the Union as exclusive representative of all the employees. The Company thereafter refused to bargain with the Union on the ground that the Union had not been validly chosen as the bargaining agent of a majority of the employees. The Board, upon a charge filed by the Union, issued a complaint alleging that the Company was engaging in unfair labor practices. A hearing was held before a Trial Examiner and his conclusion that the Company had lost its right to challenge the status of Mrs. Kane and was therefore guilty of an unfair labor practice under § 8(1) and (5) of the Act, 29 U.S.C.A. § 158(1, 5), was affirmed by the Board and the order which the Board here seeks to enforce was then issued.

The issues before us are: (1) Whether the Board had jurisdiction to find the Company guilty of an unfair labor practice for refusing to bargain with the certified representative of the employees; and (2) whether the Company had waived its right to challenge the vote of Mrs. Kane.

The provisions of the consent election agreement with which we are here concerned are set forth below.[1] This agreement was approved by the Board's Regional Director.

1 "Agreement for Consent Election

"The undersigned Employer (herein called Employer) and the undersigned labor organization(s), subject to the approval of the Regional Director for the National Labor Relations Board (herein called the Regional Director and the Board respectively), hereby agree as follows:

"1. Secret Ballot.—An election by secret ballot shall be conducted under the supervision of the Regional Director among the employees in the Unit defined below, at the indicated time and place, to determine whether or not the employees desire to be represented by (one of) the undersigned labor organization(s). Said election shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the customary procedures and policies of the Board; provided that the determination of the Regional Director shall be final and binding upon any question, including questions as to the eligibility of voters, raised by any party

hereto relating in any manner to the election.

\*　　\*　　\*　　\*　　\*

"3. Eligible Voters.—The eligible voters shall be those employees included within the Unit, who appear on the Employer's pay roll for the period indicated below, including employees who did not work during said pay-roll period because they were ill or on vacation or temporarily laid off, and including employees in the armed forces of the United States who present themselves in person at the polls, but excluding any employees who have since quit or been discharged for cause and have not been rehired or reinstated prior to the date of the election. At a date fixed by the Regional Director, the Employer will furnish to the Regional Director an accurate list of all the eligible voters, together with a list of the employees, if any, specifically excluded from eligibility.

\*　　\*　　\*　　\*　　\*

"6. Observers.—Each party hereto will be allowed to station an equal number of

The Company urges that it is not guilty of the unfair labor practice of refusing to bargain with the representative certified by the Board since the Union was not selected as the bargaining agent by a majority of the employees in the designated unit, and that neither waiver nor estoppel can enlarge an unfair labor practice as defined by the National Labor Relations Act.

The Company's contention that the Union does not represent a majority of the employees depends upon its assertion that Mrs. Kane was not an employee on the date specified in the election agreement. There is no evidence before us on this issue and neither the Trial Examiner nor the Board made any finding as to whether she had the status of an employee when she voted. The Trial Examiner and the Board held that because the Company had not challenged Mrs. Kane's vote at the time of the election it was estopped from contesting the validity of her ballot at any time thereafter. Although the parties are not in accord as to whether the consent election agreement permitted a challenge of an employee's ballot after the election, we do not find it necessary to consider that problem because of the view we take of the case.

■ Section 8(5) of the Act makes it an unfair labor practice for an employer to refuse to bargain with the representative of his employees chosen by a majority of those employees. We do not believe that the Board has jurisdiction to find an employer guilty of such violation unless the Union with which he refuses to deal was chosen by a majority of the employees voting in the election. The Act does not give the Board or the Court power to compel an employer to deal with a union which was not selected by a majority of his employees. No theory of waiver or estoppel can be applied against an employer to confer jurisdiction upon the Board where the union with which the employer refuses to deal has not been chosen by a majority of the employees in the appropriate unit. Mooresville Cotton Mills v. N. L. R. B., 4 Cir., 1938, 94 F.2d 61, 65.

■ Sound considerations of public policy, in addition to the express language of the statute, compel this conclusion. Congress did not intend to sacrifice all the rights of the employees voting against the union. It preserved the right of these employees to make effective their disinclination to appoint a collective bargaining agent where their number constitutes one-half or more of the total employees participating in the election. We do not feel that Congress intended to force a bargaining representative upon 115 employees who vote against such a representative when only 115 employees vote for it. Hence we conclude that the Board had no jurisdiction to find the Company guilty of violating § 8(5) in the absence of a finding that Mrs. Kane was an employee on the date stipulated. It is the duty of the Board to make a finding as to whether she was or was not an employee on April 21, 1944. If Mrs. Kane was an employee as of the date of the payroll list used to determine the eligibility of employees to vote in this election, then the Board will have jurisdiction to find the employer guilty of an unfair labor practice.

■ The Board urges that this case falls within the principles laid down in N. L. R. B. v. Capitol Greyhound Lines, 6 Cir., 1944, 140 F.2d 754, certiorari denied 322 U.S. 763, 64 S.Ct. 1285, 88 L.Ed. 1590. In that case an election was held under a consent election agreement, which provided, as in the instant case, that the determination of the Regional Director on all questions including eligibility of voters was to be final and binding. Several days after the election, the employer filed objections to the election, contending inter alia, that one Nolan was not entitled to vote as he was not an employee on the

authorized observers, selected from among the nonsupervisory employees of the Employer, at the polling places during the election to assist in its conduct, to challenge the eligibility of voters, and to verify the tally. * * *

"7. Objections, Challenges, Reports Thereon.—Objections to the conduct of the ballot, or to a determination of representatives based on the results thereof, may be filed with the Regional Director within five days after the issuance of the Tally of Ballots. Copies of such objections must be served upon the other parties. The Regional Director shall investigate the matters contained in the objections and issue a report thereon. If objections are sustained, the Regional Director may in his report include an order voiding the results of the election and, in that event, shall be empowered to conduct a new election under the terms and provisions of this agreement at a date, time, and place to be determined by him. If challenges are determinative of the results of the election, the Regional Director shall investigate the challenges and issue a report thereon."

eligibility date designated by the agreement. The employer used the payroll list of August 15, in the belief that it was the same as that of July 31, the designated date. In fact, Nolan was hired after July 31, but before August 15, so that his name appeared on the August list but not on the July list. Nolan voted in the election and the employer did not challenge his vote at the polls. The Circuit Court sustained the Board's decision upholding the election. Although at first glance the factual situation in the Capitol Greyhound case would seem very close to the situation under consideration in the case at bar, a thorough study of that case shows that there was no dispute as to the fact of Nolan's status as an employee. It was assumed that he became an employee after July 31st. The only dispute was as to the right of the employer to make a post election challenge. There was no question of jurisdiction. Since Nolan was admittedly an employee on the date of the election, it cannot be said that the Board was without jurisdiction to certify the Union as the bargaining agent of the employees. The statute gives the Board discretion to use any reasonable method it deems wise to determine whether a Union represents a majority of employees. Had the employer contested the fact of Nolan's employment as of the election and had the Board made no finding on that issue, the result in the Capitol Greyhound case might well have been different. While the Board has broad discretion in determining which group of employees is to constitute the bargaining unit and what qualifies an employee to vote, the Board has no power to tally the vote of one not an employee in determining whether the unit has received a majority vote. Insofar as any language of the Capitol Greyhound case may be inconsistent with the decision in the instant case, we feel that that language is too broad to be justified by the terms of the Act.

■ We do not now intend to pass on the validity of the consent election agreement as a whole, which the Board frequently uses as a means of administrative convenience and which undoubtedly facilitates the speedy determination of bargaining representatives and avoids the necessity of many lengthy and costly formal procedures by the Board. It is sufficient for the present to hold that the Board cannot confer upon itself a jurisdiction, which it does not have under the statute

creating it, either by its own rules and regulations or by its approval of consent election agreements.

■ The Board undoubtedly has broad discretion to determine the manner in which the bargaining representative is to be designated. Southern S. S. Co. v. N. L. R. B., 1942, 316 U.S. 31, 37, 62 S.Ct. 886, 86 L.Ed. 1246; N. L. R. B. v. Waterman S. S. Co., 1940, 309 U.S. 206, 60 S. Ct. 493, 84 L.Ed. 704; N. L. R. B. v. Falk, 308 U.S. 453, 458, 60 S.Ct. 307, 84 L.Ed. 396. And the Board may utilize any reasonable method it deems wise, so long as the procedure and rules it employs result in the choice of a bargaining representative by a majority of the employees in the designated unit. But the Board has no power to treat an employer's refusal to bargain with employees' representative as an unfair labor practice where that representative has not been selected by a majority of his employees. Mooresville Cotton Mills v. N. L. R. B., supra.

It is clear that the Board does not have the power to certify a union with which the employer has expressly agreed to bargain if that union does not represent a majority of the employees. How then can the employer confer jurisdiction, indirectly, on the Board by his agreement to the terms of an election which permit the bargaining representative to be designated by less than a voting majority of the employees in the unit?

Although the Act may not require that the certified representative be selected by a majority of all the employees, including those not voting, in the designated unit, the Act does require that the bargaining agent be chosen by a majority of those employees who do vote. The analogies the Board makes to corporate and political elections are not applicable to the instant case, since the powers of the Board are derived solely from the statute. We can construe its powers only in light of the statute creating it.

Because of the view we take of this case we find it unnecessary to pass on the correctness of the Board's interpretation of the consent election agreement to the effect that it did not permit challenging of individual voters after the balloting.

The petition for enforcement of the order is denied and the case is remanded to the National Labor Relations Board for further proceedings not inconsistent with this opinion.