**NATIONAL LABOR RELATIONS BOARD
v. CARLTON WOOD PRODUCTS CO.**

No. 13307.

United States Court of Appeals
Ninth Circuit.

Jan. 30, 1953.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Nor-man Somers, Asst. Gen. Counsel, Dominick L. Manoli and William J. Avrutis, Attys., N.L.R.B., Washington, D. C., for petitioner.

E. A. Weston, Boise, Idaho, for respondent.

Before MATHEWS, STEPHENS and ORR, Circuit Judges.

ORR, Circuit Judge.

The National Labor Relations Board petitions for enforcement of an order issued against respondent, the operator of a wood box and lumber manufacturing plant at Payette, Idaho. Respondent purchases materials and sells its products across state lines, and is admittedly engaged in commerce within the meaning of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., as amended by the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq. No jurisdictional question is raised.

The Board found that respondent had refused to bargain collectively with the Blue Mountain District Council of Lumber and Sawmill Workers, the union which had been certified as bargaining representative for respondent's employees, thereby violating § 8(a)(5) and (1) of the Act. 29 U.S.C.A. § 158(a)(5) and (1). The proposed order requires respondent to cease and desist from refusing to bargain collectively with the certified union, from interfering with the union's efforts to bargain and, in addition, to take certain affirmative action which the Board found would effectuate the policies of the Act.

Respondent concedes that it refused to bargain. Its contention is that certification of the union was invalid because the Regional Director, who supervised the election and issued the certification under the terms of a consent election agreement, refused respondent's request for a formal hearing on the validity of a challenged and decisive ballot cast at the time of the representation election.

On April 7, 1950 respondent and the union entered into an agreement for a consent election which provided that the Regional Director for the 19th Region would supervise an election among respondent's

employees in an appropriate unit to determine whether they wished the union to be their collective bargaining representative. This agreement provided that the election should be conducted "in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the customary procedures and policies of the Board, provided that the determination of the Regional Director shall be final and binding upon any question, including questions as to the eligibility of voters, raised by any party hereto relating in any manner to the election." The agreement further provided for the filing of objections to the conduct of the election and stated that "if the challenges are determinative of the results of the election, the Regional Director shall investigate the challenges and issue a report thereon."

In February 1950 respondent had laid off a number of employees because the operation of a certain department was no longer necessary during the company's slack season. On March 11, 1950 respondent's attorney wrote on its behalf to the Regional Director that the lay off was "temporary;" that the company might have to lay off some more employees "during this slack season," that the company had "notified each employee that he would be reemployed as soon as new employees were necessary," and that "at this time I see no reason why all of the employees who were on the payroll at the time the union asked for bargaining rights [February 20, 1950] should not vote." The consent election agreement therefore provided that "the eligible voters shall be those employes * * * who appear on the employer's payroll for the period indicated below, including employees who did not work during said pay-roll period because they were ill or on vacation or temporarily laid off, but excluding any employees who have since quit * * *" The payroll period was specified to be that "immediately preceding election, plus employees temporarily laid off since February 1, 1950."

On April 12, 1950, 22 votes were cast at the representation election; ten votes were cast in favor of the union, ten votes against it, and two ballots were challenged

by respondent. The Regional Director caused an investigation to be made of these challenges and, on April 17, 1950, issued his report sustaining the challenge to one ballot and rejecting the challenge to the ballot of voter Oren Wren. Wren's ballot was thereupon opened and found to be in favor of the union, which thus received a majority of one vote.

The facts relating to Oren Wren's employment, as found by the Regional Director, are not in dispute, although respondent disagrees with the Director's conclusion that Wren was eligible to vote. Wren was one of the group of employees temporarily laid off during February 1950, and was called back to work by respondent during the latter part of March 1950. During the period of the layoff, however, Wren had lost a finger in an accident, and his doctor had not yet released him for employment. Wren traveled to respondent's plant and told the company that his injury prevented him from reporting for duty. He has stated to the Regional Director his intention to report for work as soon as he is able to do so. Respondent's manager admits that the offer of reinstatement has not be withdrawn. On the basis of these facts the Regional Director determined that under the provision of the consent election agreement that employees "ill or on vacation or temporarily laid off" were eligible to vote, Oren Wren's ballot should be counted.

On the same date that the Regional Director's report issued, respondent wrote to the Director stating its position that Wren's inability to report for work had resulted in his loss of status as an employee. Respondent again explained its views in letters written to the Director on April 27 and May 10, 1950. In this latter communication, respondent for the first time asked for a "hearing" on its challenges. This request was made three weeks after the Director's report issued. No action was taken on the request. The Director certified the union as the employees' duly elected bargaining representative and later wrote to respondent that there was no basis for revoking the certification.

■ It is not entirely clear whether respondent objects solely to the refusal of the Regional Director to grant a hearing, or also contends that the Director's determination on the merits that Wren's ballot should be counted was improper. Determinations by a Regional Director acting pursuant to a consent election agreement which specifies that such determinations will be final and binding can be set aside only where they are arbitrary or capricious, or not in conformity with the policies of the Board and the requirements of the Act. N.L.R.B. v. General Armature & Mfg. Co., 3 Cir., 1951, 192 F.2d 316, certiorari denied 343 U.S. 957, 72 S.Ct. 1052; Semi-Steel Casting Co. of St. Louis v. N.L.R.B., 8 Cir., 1947, 160 F.2d 388, certiorari denied 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344; N.L.R.B. v. Capitol Greyhound Lines, 6 Cir., 1944, 140 F.2d 754, certiorari denied 332 U.S. 763, 64 S.Ct. 1285, 88 L. Ed. 1590. Respondent did not contend during the unfair labor practice proceedings before the Board, resulting from its refusal to bargain collectively with the certified union, that the determination on the merits by the Regional Director that Oren Wren was an employee eligible to vote in the election was arbitrary or capricious. The question is, therefore, not before this court. Section 10(e), National Labor Management Relations Act, 29 U.S.C.A. § 160(e).

We find it unnecessary to consider whether in the absence of the consent election agreement respondent would have been entitled to a formal hearing on its challenge to the eligibility of the person casting the determinative ballot, because we find that by the terms of the agreement respondent waived any right to a formal hearing on the challenge it might otherwise have had.

■ The "Agreement for Consent Election" executed by respondent and the union is a contract and, as such, its provisions, if not otherwise contrary to law, are valid and binding upon the parties who have expressed their mutual assent thereto. Semi-Steel Casting Co. of St. Louis v. N.L.R.B., supra; N.L.R.B. v. Capitol Greyhound Lines, supra; cf. N.L.R.B. v. A. J. Tower Co., 1946, 329 U.S. 324, 67 S.Ct. 324, 91 L. Ed. 322.

Respondent relies upon N.L.R.B. v. Sidran, 5 Cir., 1950, 181 F.2d 671, 672, in contending that under the consent election agreement it did not waive its right to a formal hearing. In the Sidran case, the Court refers to the *"undisclosed* and independent investigation" [emphasis added] of the Regional Director upon the basis of which his report issued rejecting the employer's challenges to the eligibility of certain voters. In the present case, on the other hand, the Regional Director's report discloses that he interviewed the company manager and the employees whose votes were challenged. To that extent the factual situations may be distinguished. However, in the Sidran case the Court stated: "We do not interpret or construe the consent election agreement or the applicable Board rules and regulations as providing for any waiver of a hearing in such cases." 181 F.2d at page 673.

■ Upon considering the pertinent provisions of the consent election agreement executed in the instant case, we believe they may be reasonably interpreted to waive any right to a formal hearing on challenges which might otherwise have existed. We rely on the following provisions:

First, the agreement states: "Such election shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the customary procedures and policies of the Board * * *." The Act itself contemplates waiver of hearings by agreement. Section 9(c)(4) specifically provides: "Nothing in this section shall be construed to prohibit the waiving of hearings by stipulation for the purpose of a consent election in conformity with regulations and rules of decision of the Board." 29 U.S.C.A. § 159(c) (4). The applicable Rules and Regulations of the Board provide for consent election agreements leading to determinations of fact by the Regional Director which shall be final. Rule 203.54, Series 5, 29 Code Fed. Regs. § 102.54 (1949). This rule has been continued in Series 6, 29 Code Fed.

Regs. § 102.54 (Supp.1952). Respondent should have known that one of the "customary procedures and policies of the Board" was to construe consent election agreements of this type as waiving any right to formal hearing. See International Shoe Co., 87 N.L.R.B. 479, 480 (1949); Merrimac Hat Corp., 85 N.L.R.B. 329, 332–333 (1949); Highland Park Mfg. Co., 84 N.L.R.B. 744, 757 (1949), enforcement denied on other grounds, 341 U.S. 322, 71 S.Ct. 758, 95 L.Ed. 969; Ferriss-Lee Lumber and Mfg. Co., 71 N.L.R.B. 989, 989–990 (1946); Michle Printing Press and Mfg. Co., 58 N.L.R.B. 1134, 1135–1136 (1944). The Board has consistently maintained its position even subsequent to the decision of the Fifth Circuit in N.L.R.B. v. Sidran, supra. See Standard Transformer Co., 97 N.L.R.B. 669, 687–689 (1951).

 Second, the agreement further states: "* * * the determination of the Regional Director shall be final and binding *upon any question,* including questions as to the eligibility of voters, raised by any party hereto relating *in any manner* to the election." (Emphasis added.) We believe this language is broad enough to enable the Regional Director to exercise discretion in choosing the procedural method he will use for determining the validity of objections to the election and challenges to the eligibility of particular voters. A decision to proceed by *ex parte* investigation rather than formal hearing might in a given case be arbitrary and capricious, but not where, as here, there is dispute only as to the conclusions to be drawn from undisputed basic facts. Respondent has not shown that it lacked adequate opportunity to present its views to the Regional Director.

 Third, the agreement further states: "If the challenges are determinative of the results of the election, the Regional Director *shall investigate* the challenges and issue a report thereon." (Emphasis added.) The natural meaning of this provision is that the Director may proceed by administrative investigation rather than formal hearing. It seems obvious that "shall investigate" does not mean "shall always hold a formal hearing." Cf. Woolley v. United States, 9 Cir., 1938, 97 F.2d 258, 262, certiorari denied, 305 U.S. 614, 59 S.Ct. 73, 83 L.Ed. 391; Jordan v. American Eagle Ins. Co., 1948, 83 U.S. App.D.C. 192, 169 F.2d 281, 285; Genecov v. Federal Petroleum Bd., 5 Cir., 1944, 146 F.2d 596, 598, certiorari denied, 324 U.S. 865, 65 S.Ct. 913, 89 L.Ed. 1420; Bowles v. Baer, 7 Cir., 1944, 142 F.2d 787, 788. Administrative investigation may often be the more efficient and less time consuming method of deciding questions arising out of representation elections.

 Respondent also argues that it should not now be required to bargain with the certified union in the absence of a new election, because of the length of time that has elapsed since the representation election in April 1950 and the "questionable status of the union as bargaining representative." Even if the union has lost its majority status, which has not been shown, the employer should not profit from his own unlawful refusal to bargain, to which must be attributed the alleged loss by the union of its majority. The Board may, therefore, properly order respondent to bargain. Frank Bros. Co. v. N.L.R.B., 1944, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 435; N.L.R.B. v. P. Lorrillard Co., 1942, 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. 380; N.L.R.B. v. Andrew Jergens Co., 9 Cir., 1949, 175 F.2d 130, certiorari denied 318 U.S. 827, 70 S.Ct. 76, 94 L.Ed. 503.

A decree will be entered enforcing the Board's order.