## NATIONAL LABOR RELATIONS BOARD v. STANDARD TRANSFORMER CO.

No. 11647.

United States Court of Appeals,
Sixth Circuit.

March 31, 1953.

Irving M. Herman, Washington, D. C. (George J. Bott, David P. Findling, A. Norman Somers, Elizabeth W. Weston and Irving M. Herman, Washington, D. C., on the brief), for petitioner.

Eugene Schwartz, Cleveland, Ohio (Stanley, Smoyer & Schwartz, Cleveland, Ohio (Eugene B. Schwartz, Cleveland, Ohio), Hoppe, Day & Ford, Warren, Ohio (John Q. T. Ford, Warren, Ohio), for respondent.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order of December 28, 1951, issued against The Standard Transformer Company, respondent herein, following the usual proceedings under § 10 of the National Labor Relations Act, as amended. §§ 160, 160(e), Title 29 U.S.C.A. Jurisdiction is conceded by the respondent.

The complaint charged respondent with violation of §§ 8(a) (1) and 8(a) (2) of the Act and also with refusing to bargain with the International Union of Electrical, Radio and Machine Workers, CIO (hereinafter referred to as the Union), after it was duly certified as the bargaining representative of the employees, in violation of § 8(a) (5) of the Act. At the hearing before the trial examiner, respondent conceded violations of §§ 8(a) (1) and 8(a) (2). The trial examiner found that the respondent had also violated § 8(a) (5) of the Act. The Board adopted that finding and by its order directed the respondent to cease and desist from refusing to bargain collectively with the Union as the exclusive representative of all its employees in the appropriate unit with respect to wages, hours or other conditions of employment. The respondent contests the correctness of that portion of the order. That is the only issue before us in this proceeding.

The facts relative to this issue are not in dispute. On June 6, 1950, the Union filed a petition with the Board requesting certification as the bargaining representative of respondent's employees. On June 15, 1950, the respondent and the Union signed an Agreement for Consent Election, which was recommended by the field examiner for the Board and approved by its acting Regional Director. This provided that the parties "hereby waive a hearing and agree that an election by secret ballot is to be held under the supervision of the said Regional Director, among the employees of the undersigned employer * * * at the indicated time and place, to determine the proposition checked below." It also provided: "Such election shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the customary procedures and policies of the Board, provided that the determination of the Regional Director shall be final and binding upon any question, including questions as to the eligibility of voters, raised by any party hereto relating in any manner to the election." The Agreement provided that the eligible voters were those employees who appeared on the employer's payroll for a designated period, including employees who did not work during the period because they were ill or on vacation or temporarily laid off. It also provided for the filing of objections to the conduct of the election or to a determination of the representatives based upon the result thereof. With respect to challenges to voters the Agreement provided: "If the challenges are determinative of the results of the election, the Regional Director shall investigate the challenges and issue a report thereon."

Pursuant to the Agreement, the election was held on June 29th. The count showed that 34 votes had been cast for the Union, 35 for an independent association, and that 17 ballots had been challenged. The challenged ballots were those of employees who had been laid off on June 5th "for an indefinite period." Respondent contended that these layoffs were of a permanent character, warranted by a decline in business, and that such employees were not eligible voters. The Union contended the layoffs were temporary, thus making these employees eligible voters under the terms of the Agreement.

Pursuant to the terms of the Agreement, the Regional Director investigated the challenges and on October 19th issued his report. The report set out the facts as found by the Regional Director, discussed the issue involved, ruled that the laid-off employees had a sufficient interest to partici-

pate in the election, and directed that their ballots be opened and counted on October 25th, in the presence of representatives of the interested parties.

On October 23rd, the respondent filed with the Board and with the Regional Director "Exceptions by Employer to Report of Regional Director on Objections and Challenged Ballots dated October 19, 1950 and Motion for Formal Hearing on Challenged Ballots." This instrument excepted to the ruling and to the Regional Director's failure to provide a formal hearing on the employer's challenges to the ballots, and also moved that the Regional Director schedule "a formal hearing to secure the facts which will determine the eligibility of laid-off employees to vote in the election." Receipt of the Exceptions was acknowledged, but no hearing was held. On October 25th, the Regional Director issued a Revised Tally of Ballots, counting the ballots which had been challenged, which showed that the Union had received 51 votes, and the association 35 votes. On October 31st, the Regional Director issued on behalf of the Board a Certification of Representatives, in which he designated the Union as the bargaining agent.

On November 1st, the Union requested recognition and negotiations. On November 2nd, the respondent refused to recognize the Union on the ground that the certification was "invalid and contrary to law unless a formal hearing is first held on the eligibility of the 17 challenges." The complaint thereafter issued on February 8, 1951 in which it was stated that on June 29, 1950 a majority of the employees select the Union as their representative for the purposes of collective bargaining and it was so certified on October 31, 1950, and that on about November 2, 1950, and at all times thereafter, the respondent refused to bargain collectively with the Union as such exclusive representative of the employees. Respondent's answer attacks the validity of the certification on the ground that the certification was based on the findings contained in the report, that no hearing was held to support the findings in said report, that the respondent had no opportunity to be heard, to examine and cross-examine

witnesses, and to introduce evidence in its own behalf to impeach or contradict the facts found by the Regional Director, and that said findings were erroneous.

The issue thus presented is a narrow one, namely, whether the certification of the Union was valid, being based upon the Regional Director's determination that the challenged ballots should be counted, which determination was made upon his ex parte investigation without formal hearing, which would have enabled the respondent to examine or cross-examine witnesses and introduce evidence in its own behalf. The respondent's contention is that the denial to it of a formal hearing in the representation proceeding makes the certification a nullity. The Board contends that the Agreement for Consent Election waived the right of a formal hearing and permitted the determination to be made by the Regional Director without a hearing. The respondent contends that the Agreement for Consent Election was not such a waiver.

■■ Much of respondent's argument is directed to the proposition that the Act contemplates a proceeding which is participated in by the employer, of which a record is made, from which the validity of the order can be reviewed by the Court of Appeals, and that such a proceeding necessarily includes the right to a hearing. § 9(d), with reference to enforcement of the Board's orders, provides for a record of the investigation made by the Board when its order is based upon facts certified following an investigation. In N. L. R. B. v. Indiana & Michigan Electric Co., 318 U.S. 9, at page 28, 63 S.Ct. 394, at page 405, 87 L.Ed. 579, the Supreme Court stated the general fundamental principles with respect to findings of fact by the Board, saying that the reviewing court is given discretion to see that before a party's rights are foreclosed his case has been fairly heard, and "Findings cannot be said to have been fairly reached unless material evidence which might impeach, as well as that which will support, its findings, is heard and weighed." Such is the well accepted rule in adversary proceedings. But it is clear that the parties can waive the rights thus conferred by the Act, including

849

the right to a hearing, and that a stipulation for a consent election will be binding upon the parties according to its terms. § 9(c) (4) of the Act, as amended in 1947, § 159 (c) (4), Title 29 U.S.C.A.; N. L. R. B. v. J. L. Hudson Co., 6 Cir., 135 F.2d 380, 383–384; N. L. R. B. v. Capitol Greyhound Lines, 6 Cir., 140 F.2d 754, 758; Semi-Steel Casting Co. v. N. L. R. B., 8 Cir., 160 F.2d 388, certiorari denied 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344. Our question is accordingly limited to the proper construction to be given to the Agreement for Consent Election executed by the parties in this case.

■■ The Supreme Court has not passed upon the exact question herein involved. Respondent relies heavily upon N. L. R. B. v. Sidran, 5 Cir., 181 F.2d 671, where the Court held that the Regional Director's certification of the Union was invalid for the Director's failure to grant a hearing on the issue of voting eligibility of challenged employees, in a consent election held under an Agreement similar to the Agreement in the present case. Part of the opinion in that case deals with the general propositions that (1) an ex parte investigation followed by a ruling without a hearing fails to afford a litigant the fair trial to which he is entitled, citing Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 999, 82 L.Ed. 1129 and (2) a finding by the Regional Director, even under a consent election, which is arbitrary and capricious can be set aside, citing N. L. R. B. v. Prudential Insurance Co., 154 F.2d 385, from this Court. As pointed out above, such principles are not disputed, but they do not meet the issue in this case. Respondent has not charged that the findings of the Director are arbitrary and capricious, and, in fact, objected to, and succeeded in excluding, evidence offered to show the nature of the investigation and the fairness and correctness of the finding. Respondent relies solely upon the refusal to afford it a hearing.

■ The Court also held in the Sidran case that it did not interpret or construe the consent election agreement or the applicable Board rules and regulations as providing for a waiver of a hearing. The

discussion on this issue, however, centers largely upon the possible abuse of such a waiver with the resulting impairment of a party's constitutional rights. The opinion does not discuss the specific Regulations and procedure relied upon by the Board to sustain its action. The argument with reference to possible abuse of such procedure, is, we think, answered by the well established rule that such a finding can be invalidated if found to be arbitrary and capricious. See Semi-Steel Casting Co. v. N. L. R. B., supra, 8 Cir., 160 F.2d 388, 391; N. L. R. B. v. General Armature & Mfg. Co., 3 Cir., 192 F.2d 316.

■ The Court of Appeals for the Ninth Circuit has just recently ruled on the same question. N. L. R. B. v. Carlton Wood Products Co., 201 F.2d 863. The Court declined to follow the ruling in the Sidran case and held that the certification of the Union was valid, even though the investigation of challenged ballots and the ruling were without a hearing. As stated in that opinion, the agreement authorized the Director to "investigate" the challenges and make a report, and that there is a distinct difference between investigations and hearings. Genecov v. Federal Petroleum Board, 5 Cir., 146 F.2d 596, 598, certiorari denied 324 U.S. 865, 65 S.Ct. 913, 89 L.Ed. 1420; Jordan v. American Eagle Fire Ins. Co., 83 U.S.App.D.C. 192, 169 F.2d 281, 285; Woolley v. United States, 9 Cir., 97 F.2d 258, 262. It was also pointed out that one of the "customary procedures and policies of the Board" [160 F.2d 389] which respondent agreed to abide by, was to treat consent election agreements of the type herein involved as waiving any right to a formal hearing. Highland Park Mfg. Co., 84 N.L.R.B., 744, 757–758; Merrimac Hat Corporation, 85 N.L.R.B. 329; Ferriss-Lee Lumber & Mfg. Co., 71 N.L.R.B. 1134, 1135–1136. We agree with the view of the Court in that case that the language of the Consent Agreement is broad enough to authorize the Regional Director to exercise discretion in choosing the procedural method he will use for determining the eligibility of the challenged voters.

This construction of the Consent Agreement finds support in the action of the re-

spondent. The election was held on June 29th. Although an investigation of the challenged ballots was thereupon undertaken by the Regional Director for the purpose of making his Report, the respondent did not request any "hearing" or a right to participate therein, of which it now claims to have been deprived, until October 23rd, more than three and a half months after the investigation was called for, and then, only after an adverse Report had been made by the Regional Director.

Decree of Enforcement be entered.