**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PARKHURST MANUFACTURING COMPANY, Inc., Respondent.**

**No. 17095.**

United States Court of Appeals
Eighth Circuit.

May 16, 1963.

Gary Green, Atty., N. L. R. B., made argument for petitioner and Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Allison W. Brown, Jr., and Robert A. Armstrong, Attys. for N. L. R. B., were on the brief.

John K. Pickens, Washington, D. C., made argument for respondent and William T. Stephens, Washington, D. C., was with him on the brief.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

BLACKMUN, Circuit Judge.

The National Labor Relations Board seeks enforcement here of its unanimous full-board order against Parkhurst Manufacturing Company, Inc. It found, 136 NLRB No. 81, that Parkhurst had violated § 8(a) (1), (3), and (5) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(a) (1), (3), and (5).

Parkhurst does not here contest the Board's findings as to independent violations of § 8(a) (1) and (3). It confines its attack upon the claimed violation of § 8(a) (5), and consequently of § 8(a) (1), consisting of Parkhurst's refusal to bargain collectively with General Drivers, Warehousemen & Helpers Local Union 534, a Teamsters affiliate which

had been certified on May 22, 1961. Our review is restricted to this aspect.

Parkhurst is engaged in the manufacture and sale of small trailers and truck bodies. It has a maintenance plant at Sedalia, Missouri, and a farm plant five miles west of that city on a farm where its president, W. R. Parkhurst, resides.

Parkhurst and the union executed a consent election agreement in March 1961. An election by secret ballot, as the agreement specified, was held in April. The Regional Director's tally showed 14 ballots for the union, 12 ballots against, and 4 challenged ballots. The number challenged was thus sufficient to affect the results of the election.

The Regional Director made an investigation and issued a Report and Determination. The four ballots questioned were those of Harold Williams, whom the union claimed to be an "office worker"; Byron Oswald, challenged as a supervisor; H. E. Logan, challenged as a salesman; and Larry Mahnken, challenged as laid off. The Director in his report found (a) that Williams was a supervisor within the meaning of the Act; (b) that Oswald "is not a regular production and maintenance employee" but "is principally employed to oversee and supervise the farm operations", and "is more nearly identified with management"; and (c) that Logan was a parts salesman for Mr. Parkhurst's retail farm implement dealership, was not employed by the respondent, performed no work for it, and had little contact with its production and maintenance operation. The challenges

to these three were therefore sustained. The Director found it unnecessary to pass upon the challenge to Mahnken. The union was then certified. ·

Parkhurst promptly sent the Regional Director a telegraphic request for reconsideration and hearing. It set forth therein what it proposed to prove at the hearing.[1] This was denied on June 14 and the union's certification was reaffirmed. The Director in so acting stated that "the Employer's exceptions do not present substantial additional facts not previously considered or that would warrant changing the previous determination". Parkhurst attempted to appeal to the Board. Its Associate Executive Secretary, however, advised Parkhurst that it was the Board's policy not to interfere with the Director's action in a case involving an agreement for consent election, that the Board refused to entertain an appeal in such a situation "absent arbitrary or capricious conduct" and that, in "the absence of a clear or even close showing of arbitrariness", his office "has been authorized by the Board not to entertain an appeal".

Subsequent to its certification, the union asked Parkhurst to enter into bargaining negotiations with it. Parkhurst refused so to do. On July 26 it advised the union that the matter was pending before the Board and that "It would, therefore, be premature to meet at this time".

Meanwhile, on June 2 an unfair labor practices complaint was filed against Parkhurst. As later amended, this

[1] "Employer will establish at a hearing that (1) Williams is a truck driver who cannot effectively recommend wage increases or hiring or firing. His salary is reasonably low for a truck driver with his seniority. (2) Oswald works in the plant daily with repeated regularity when farm work is finished and has a community of interest with production employees. (3) Logan has direct and regular contact and works with production employees and his duties are identical to Jerry Nicholson who was included in unit and not challenged. Larry Mahnken is a production employee whose duties are identical to Ziegelpein whose ballot was

not challenged. Obviously these two challenges made on basis of union membership. (4) Employer was affirmatively misled by representations of Board agent into executing a consent election agreement which purported to take away his rights under the Act. Union and employer agreed upon the 30 employees to be included in the unit and agreed there would be no challenges. Union affirmatively and with design misled employer into not challenging anyone on agreed list and then union challenged on basis of union membership. Such conduct vitiates consent election agreement."

charged violations of § 8(a) (1), (3), (4), and (5) of the Act. A hearing was held on July 26 and 27. At this hearing the examiner refused to receive testimony directed to the status of each of the four persons whose ballots had been challenged and to alleged arbitrary and capricious conduct of the Regional Director. Offers of proof were made. The hearing resulted in the order now before us.

Parkhurst argues here (a) that the union certification was invalid and as a consequence there was no § 8(a) (5) violation; (b) that it was invalid because the Director's determination was arbitrary and capricious; and (c) that inquiry, by a proper hearing, into a charge of arbitrary conduct is a matter of right.

The case pivots on the agreement for consent election. This agreement was executed by the union and by Parkhurst (by its president), was recommended by the field examiner, and was approved by the Regional Director. It specified that the appropriate bargaining unit was "All production and maintenance employees, excluding office clerical employees, guards, professional and supervisory employees as defined in the Act". It contained provisions as to the furnishing of lists of eligible voters and of employees excluded from eligibility, as to election observers, as to the rules governing the election,[2] as to objections and challenges, and as to the investigation of objections and challenges.[3]

1. The effect of the consent election agreement. The agreement is certainly definite and specific. It defines the bar-

gaining unit. It provides that the Regional Director's determination "upon any question, including questions as to the eligibility of voters", raised by any party "relating in any manner to the election" shall be "final and binding". It provides that upon the filing of objections when challenges are determinative of the result, the Director "shall investigate * * * and issue a report thereon". And it provides that the "method of investigation * * * including the question whether a hearing should be held in connection therewith shall be determined by the Director whose decision shall be final and binding".

This is positive language directed toward a limitation of review. It presents little or no opportunity for difference of opinion as to its meaning. Indeed, there is no real dispute here as to its significance. This court's comments in Semi-Steel Casting Co. v. N. L. R. B., 8 Cir., 1947, 160 F.2d 388, 391, cert. denied 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344, a not dissimilar case involving a consent election agreement, are pertinent here:

"On the issue raised concerning the rejected ballots, the terms of the consent election agreement may not be ignored. The agreement is in the form customarily used by the Board. Its purpose is to guard against disputes concerning the conduct of elections, to provide for the prompt and final settlement of such controversies as may arise between the parties, and thus to minimize delay in the administration of the Act. * * * On review the Board accepts the Re-

---

2. "Said election shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the applicable procedures and policies of the Board, provided that the determination of the Regional Director shall be final and binding upon any question, including questions as to the eligibility of voters, raised by any party hereto relating in any manner to the election * * *."

3. "The Regional Director shall investigate the matters contained in the objections and issue a report thereon. * * * If the challenges are determinative of the results of the election, the Regional Director shall investigate the challenges and issue a report thereon. The method of investigation of objections and challenges, including the question whether a hearing should be held in connection therewith, shall be determined by the Regional Director, whose decision shall be final and binding."

gional Director's decision on all questions pertaining to the election, unless shown to be arbitrary or capricious or not in conformity with the policies of the Board and the requirements of the Act. No reason appears why the company should not be bound by the provisions of the election agreement to which it is a party. 'To hold otherwise would permit an employer deliberately to ignore binding commitments embodied in a consent agreement; would open the door to subterfuges for hampering and delaying a final determination of a bargaining representative; and would tend to defeat, rather than to effectuate, the policies of the Act.' Matter of Capitol Greyhound Lines, 49 N.L.R.B. 156, 159, enforced Sixth Circuit, 140 F.2d 754, 758, certiorari denied 322 U.S. 763, 64 S.Ct. 1285, 88 L.Ed. 1590."

To the same effect are National Labor Relations Board v. J. W. Rex Co., 3 Cir., 1957, 243 F.2d 356, 358; National Labor Relations Board v. Carlton Wood Prod. Co., 9 Cir., 1953, 201 F.2d 863, 866, 36 A.L.R.2d 1170; National Labor Relations Board v. General Armature & Mfg. Co., 3 Cir., 1951, 192 F.2d 316, 317, footnote 1, cert. denied 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357; National Labor Relations Board v. Sumner Sand & Gravel Co., 9 Cir., 1961, 293 F.2d 754, 755; Elm City Broadcasting Co. v. N. L. R. B., 2 Cir., 1955, 228 F.2d 483, 485; National Labor Relations Board v. Saxe-Glassman Shoe Corp., 1 Cir., 1953, 201 F.2d 238, 240–241. See National Labor Relations Board v. Volney Felt Mills, Inc., 6 Cir., 1954, 210 F.2d 559. Thus the execution of the consent election agreement by the union and respondent is binding upon Parkhurst and the Regional Director's determination pursuant to that agreement is conclusive unless he acts arbitrarily or capriciously or out of line with Board policy or the Act's requirements.

■■ 2. The lack of a hearing. As we have noted, the signed agreement provided that "the question whether a hearing should be held" was to be determined by the Regional Director and his decision was to be final. This contractual provision has been present in other litigated cases. It consistently has been held to constitute an appropriate waiver of any right to a formal hearing. Thus the Director's mere failure to grant a hearing with respect to the challenges here does not of itself equate with arbitrary or capricious action or inaction. National Labor Relations Board v. J. W. Rex Co., supra, pp. 358–359 of 243 F.2d; National Labor Relations Board v. Carlton Wood Prod. Co., supra, p. 866 of 201 F.2d; National Labor Relations Board v. Volney Felt Mills, Inc., supra, p. 560 of 210 F.2d; National Labor Relations Board v. Sumner Sand & Gravel Co., supra, p. 755 of 293 F.2d; National Labor Relations Board v. Standard Transformer Co., 6 Cir., 1953, 202 F.2d 846, 849.

National Labor Relations Board v. Sidran, 5 Cir., 1950, 181 F.2d 671, heavily relied upon by Parkhurst on this point, does not in our view constitute contrary authority. The consent agreement in that case did not make its provision as to the final character of the Director's determination specifically applicable to the question whether a hearing should be held. Later cases have distinguished Sidran on this ground. National Labor Relations Board v. J. W. Rex Co., supra, p. 358 of 243 F.2d; National Labor Relations Board v. Saxe-Glassman Shoe Corp., supra, p. 241 of 201 F.2d. Language in the Sidran opinion, p. 673 of 181 F.2d lends force to this approach.[4] We join in so distinguishing it.

3. The claimed arbitrary or capricious action on the part of the Regional Director. An administrative investiga-

---

4. "We do not interpret or construe the consent election agreement or the applicable Board rules and regulations as providing for any waiver of a hearing in such cases."

tion, as distinguished from a formal hearing, has been held to be within the intendment of an agreement of the kind employed here.

> " * * * [T]he agreement further states: 'If the challenges are determinative of the results of the election, the Regional Director *shall investigate* the challenges and issue a report thereon.' (Emphasis added.) The natural meaning of this provision is that the Director may proceed by administrative investigation rather than formal hearing. It seems obvious that 'shall investigate' does not mean 'shall always hold a formal hearing.' * * * Administrative investigation may often be the more efficient and less time consuming method of deciding questions arising out of representation elections." National Labor Relations Board v. Carlton Wood Prod. Co., supra, p. 867 of 201 F.2d.

Here the Regional Director did investigate administratively and here he did issue a written report in response to the challenges and objections. But this, says Parkhurst, is not enough where a factual dispute exists. We note that the Ninth Circuit in the Carlton case also said at the page cited:

> "A decision to proceed by *ex parte* investigation rather than formal hearing might in a given case be arbitrary and capricious, but not where, as here, there is dispute only as to the conclusions to be drawn from undisputed basic facts. Respondent has not shown that it lacked adequate opportunity to present its views to the Regional Director."

■■ It appears indisputable to us that whether the Director's actions in making his investigation independently, in denying the request for a hearing, and in making his determination were arbitrary or capricious necessarily depends on the status of the case before him at that time; it is not to be measured by whatever additional or different material may have been proffered in the subsequent unfair labor practices proceeding. Furthermore, Parkhurst, being the party challenging the election, has the burden of showing its impropriety. National Labor Relations Board v. Mattison Machine Works, 1961, 365 U.S. 123, 124, 81 S.Ct. 434, 5 L.Ed.2d 455; National Labor Relations Board v. Houston Chronicle Pub. Co., 5 Cir., 1962, 300 F.2d 273, 278.

■■ Parkhurst's attack here was by the telegraphed "Exceptions * * * and Objections". That telegram is set forth in footnote 1. As we read its statements concerning Williams, Oswald and Logan, we find it contains primarily conclusory matter relative to the employment of the three men at the plant. This falls short of qualifying as a proffer to the Director of alleged facts of which he was not already aware and short of refuting with substance the findings he had made in his Report and Determination. The Director was aware that Williams gave certain orders at the plant and what his salary was, that Oswald worked on the farm but also put in time at the plant, and that Logan was a parts man and had contact and "works with" employees in the production unit. Such additional factual material, if any, which the telegram asserted did not make arbitrary or capricious the Director's responsive ruling that "the Employer's exceptions do not present substantial additional facts not previously considered or that would warrant changing the previous determination". At the most the telegram appears to us only to assert error. "But something more than error is necessary to spell out arbitrary or capricious action". National Labor Relations Board v. J. W. Rex Co., supra, p. 358 of 243 F.2d; National Labor Relations Board v. Volney Felt Mills, Inc., supra, p. 560 of 210 F.2d; Elm City Broadcasting Co. v. N. L. R. B., supra, p. 486 of 228 F.2d. As the Sixth Circuit said in the Volney case, "The rulings of the Regional Director are not arbitrary or capricious since they were based upon reasonable grounds * * *."

■ Furthermore, if the offers of proof made in the later unfair labor prac-

tices proceeding may be said to contain allegations of disputed facts, their presentation then was not timely and is now of no help to Parkhurst for this material is not shown to be newly discovered or unavailable before. Pittsburgh Plate Glass Co. v. N. L. R. B., 1941, 313 U.S. 146, 158–162, 61 S.Ct. 908, 85 L.Ed. 1251; National Labor Relations Board v. Worcester Woolen Mills Corp., 1 Cir., 1948, 170 F.2d 13, 16, cert. denied 336 U.S. 903, 69 S.Ct. 489, 93 L.Ed. 1069; National Labor Relations Board v. Southern Bleachery & Print Works, 4 Cir., 1958, 257 F.2d 235, 241, cert. denied 359 U.S. 911, 79 S.Ct. 588, 3 L.Ed.2d 575; National Labor Relations Board v. Moss Amber Mfg. Co., 9 Cir., 1959, 264 F.2d 107, 110.

We are cognizant, of course, of the insistence generally upon a fair and adequate hearing as a matter of basic right and we are acquainted with such cases as Morgan v. United States, 1938, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129, and the many others cited by Parkhurst which propound this principle in varying terms. But we do not read from these authorities any requirement that a party cannot agree under appropriate circumstances to waive a hearing and to rest his case on whatever determination the Regional Director might reach. We note, for what it may be worth, that § 9(c) (4) of the Act, 29 U.S.C.A. § 159(c) (4), explicitly assures that hearings may be waived for purposes of a consent election. We hold that this was the purport of the election agreement here; that there is no illegality or impropriety about that agreement; that there is insufficient basis for the claim of arbitrariness or capriciousness; and that the situation is akin, in legal consequence, to an agreement to arbitrate or to bind one's self to other administrative determination. Compare United Steel Workers of America v. American Mfg. Co., 1960, 363 U.S. 564, 567–569, 80 S.Ct. 1343, 4 L.Ed.2d 1403 and its companion cases, and Selb Mfg. Co. v. International Ass'n. of Machinists, 8 Cir., 1962, 305 F.2d 177.

Other more minor points were raised during various stages of this litigation. They appear not to be stressed in Parkhurst's brief. In any event, we have examined them and find them without merit.

The petition for enforcement is granted in its entirety.