PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* MANHATTAN TAXI CABS CORP. ET AL., Defendants.

No. JRT-64-14.     Decided May 27, 1965.

*J. B. Fernández Badillo, Solicitor General, Luis M. Rivera Pérez, Marta Ramírez de Vera,* and *Celia Canales de González* for petitioner. *Miguel E. Herrero Frank* for defendants.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On January 9, 1964 the Unión de Operadores de Taxi filed a petition with the Puerto Rico Labor Relations Board for investigation and certification of representative for collective bargaining with the Manhattan Taxi Cabs Corp., Tomás Ortiz Taxi Service, and Clara de Ortiz Taxi. It was specifically alleged that there existed a controversy concerning the representation of the employees used by said companies in an appropriate unit for collective bargaining. Section 5 of the Labor Relations Act, 29 L.P.R.A. § 66, and 29 R.&R.P.R. § 64–15. The Board's Chairman issued a notice of hearing on January 20, addressed to the parties, 29 R.&R.P.R. § 64–19, to be held on February 7.

On February 6, the employer—it is accepted that the three companies constitute a joint business—and the petitioner

union entered into a consent election agreement which made the holding of the hearing unnecessary. From the aforementioned agreement we copy below the pertinent paragraphs:

"1. *Secret Ballot*—To consent to conduct an election by secret ballot under the supervision of the Official Examiner of the Puerto Rico Labor Relations Board, hereinafter called Official Examiner, or his representative, among the employees comprised in the appropriate unit defined below, at the time and place hereinafter indicated, to determine whether such employees of the employer desire to be represented by any of the labor organizations which enter into this Agreement or by none. The election shall be conducted pursuant to the Puerto Rico Labor Relations Act, the Rules and Regulations of the Puerto Rico Labor Relations Board in force and in accordance with its policies and procedures *provided,* that the determination of the Official Examiner upon any question arising out of any of the provisions of this Agreement shall be final and binding on the parties, including those questions concerning the eligibility of voters, the challenges against them, the objections to the conduct which prevailed during the election, and any other questions which may arise out of paragraph 9 of this Agreement, which may be raised by any of the parties in this election.

"2. *The Appropriate Unit*—The appropriate unit for collective bargaining consists of the following employees of the Employer: All the taxi drivers utilized by Manhattan Taxi Cabs Corp., Tomás Ortiz Taxi Service, and Clara de Ortiz Taxi; excluded: executives, administrators, supervisors, office personnel, mechanics, mechanic helpers, tinsmiths, and any other persons with authority to employ, discharge, promote, discipline, or in any other way change the status of the employees or make recommendations to that effect.

"3. *Eligible Voters*—The eligible voters shall be those employees included in the above described unit whose names appear in Employer's payroll for the period comprised between January 27 and February 2, 1964, but excluding any employee whose name appears in said payroll but has resigned or has been discharged for just cause since then and has not been reemployed prior to the date of the election. At the request of the Official Examiner, the Employer shall submit a complete

list in alphabetical order of all the employees included in the payroll selected.

.　　.　　.　　.　　.　　.　　.　　.

"9. *Objections and Challenges*—Objections to the conduct or to the result of the election may be filed with the Official Examiner within the five days immediately following the election, with proof that copies of said objections have been served upon all the parties. The Official Examiner shall investigate the objections and shall issue a report on the results of his investigation which shall be final and binding on the parties. If the objections are sustained, the Official Examiner may include in his report an order invalidating the results of the election. In that case he shall be empowered to conduct a new election in accordance with the conditions and provisions of this Agreement at a convenient date, hour, and place. If the challenges should affect the result of the election, the Official Examiner shall investigate and issue a report thereon, which shall be final and binding on the parties.

"10. *Certification of Representative*—Upon the conclusion of the election, the result of which has been final, the Official Examiner shall issue a 'Certification of Representative' stating the name of the labor organization which was designated and selected in the election as the exclusive representative of all the employees comprised in the appropriate unit aforementioned, for the purposes of collective bargaining with respect to wages, hours of work, and other working conditions. In case that none of the participant labor organizations receives the majority of the valid ballots cast, the Official Examiner shall issue a 'Certification of the Result of the Election' stating this fact."

The list of eligible voters was prepared and the corresponding election was held. A tally of the ballots appears certified by representatives of the employer and the union which shows that 27 out of 29 eligible voters participated; 20 ballots cast for the petitioner union, 3 against it, and 4 challenged ballots. On February 18 the corresponding certification was issued.

The union requested the employer to discuss a proposed collective agreement, which the latter refused to do, giving

rise to a complaint charging conduct of unfair labor practices within the meaning of subsections (a) and (d) of § 8 of the Act, 29 L.P.R.A. § 69. The matter having been referred to an official examiner, the latter determined that indeed defendant refused to bargain collectively with the certified organization. The Board approved the actions of said official and issued the corresponding order of cease and desist.

■ The employer reiterates now before this Court the position it assumed since the beginning of unfair labor practice proceedings before the Board: the absence of a labor-management relationship, for, in its opinion, it is a question of independent contractors—taxi "lessees"—and not of employees of the company. It is barred from raising that question by the terms of the consent election agreement.

*N.L.R.B.* v. *United Dairies*, 337 F.2d 283 (10th Cir. 1964), involved a similar state of facts. After requesting the certification of a union as statutory representative of the drivers employed by the employer for home delivery and distribution of milk and milk products, the petitioner union and the employer entered into a consent election agreement whereby the hearing was waived. In the agreement it was stipulated that the appropriate unit would comprise "All truck drivers, including all commission route drivers, relief route drivers, . . . and/or working foremen route drivers, *distributors*. . . ." The Union won the election and it was duly certified. During the contract negotiations that followed, United refused to bargain on the wages and working conditions of the home distributors alleging that they were independent contractors. Proceedings were commenced alleging the unfair labor practice of refusal to bargain. At the hearing held the Official Examiner permitted that the status of the home distributors be elucidated. He concluded that they were employees. The Board refused to determine the status of the distributors on the basis that United was precluded

from doing so since it had agreed, in a consent election agreement, to their inclusion in the appropriate unit and moreover it had not challenged their right to vote in the election by challenging their ballots. In sustaining the position of the Board, the Court of Appeals, Tenth Circuit said, at p. 286:

■■ "We agree that it is not necessary to determine the status of respondent's distributors, i.e., whether they are employees or independent contractors, on the basis of the evidence adduced at the unfair labor practices hearing. Section 9(c)(4) of the Act, 29 U.S.C.A. § 159(c)(4), expressly provides for the waiver of a representation hearing by stipulation for the purpose of a consent election in conformity with the regulations and rules of decision of the Board. An agreement to waive a hearing and for such a consent election is a contract between the parties and, unless it is otherwise contrary to law, it is binding upon the parties thereto according to its terms. [Citations.] The courts have consistently held that where such an agreement is entered into by the employer, the employee and the Board and where it provides that the determinations of the Board's Regional Director shall be final and binding, such a determination is conclusive and cannot thereafter be questioned unless the Regional Director acts arbitrarily or capriciously or out of line with board policy or the requirements of the Act. [Citations.]

". . . There can be no doubt but what the parties agreed that the distributors in question were to be included in the collective bargaining unit and, in fact, . . . that those distributors voted in the consent election. The Regional Director certified the Union as the statutory representative of the unit. This determination is not alleged to be arbitrary, capricious or out of line with board policy or the requirements of the Act. It is therefore conclusive. . . ."

See also, *Diversey Corporation* v. *N.L.R.B.*, 325 F.2d 489 (7th Cir. 1964); *Manning, Maxwell & Moore Incorporated* v. *N.L.R.B.*, 324 F.2d 857 (5th Cir. 1963); *N.L.R.B.* v. *Parkhurst Manufacturing Co.*, 317 F.2d 513 (8th Cir. 1963); *N.L.R.B.* v. *Summer Sand & Gravel Co.*, 293 F.2d 754 (9th

Cir. 1961) ; *National Labor Relations Board* v. *J. W. Rex Company*, 243 F.2d 356 (3d Cir. 1957) ; Annotation, *Construction and effect of consent election agreements under federal labor relations acts*, 36 A.L.R.2d 1177 (1954).

In *National Labor Relations Board* v. *Capitol G. Lines*, 140 F.2d 754 (6th Cir. 1944), decided pursuant to the provisions of the Wagner Act, the court cited with the approval from the Board's decision which stated that, in the presence of an agreement between the parties over the final authority of the determinations of the Regional Director, these will not be set aside except in the cases in which he has acted arbitrarily or capriciously, because "[t]o hold otherwise would permit an employer deliberately to ignore binding commitments embodied in a consent agreement; would open the door to subterfuges for hampering and delaying a final determination of a bargaining representative; and would tend to defeat, rather than to effectuate, the policies of the Act."

■ From the preceding statement of facts it appears that the employer-defendant agreed to the holding of the election, participated in it and certified the results thereof, and that it was not until it was requested to bargain that it raised for the first time the question of challenging the integration of the appropriate unit which it had previously accepted.[1] The existence of a clause on the final character of the determinations of the Official Examiner—paragraph 9 of the consent agreement—estops it from questioning now everything concerning the appropriate unit. It is not even intimated that said examiner acted arbitrarily, capriciously or not in conformity with the policies of the Board or of the Labor Relations Act.

---

[1] It is too significant that the employer submitted a proposed agreement to the Union (Exh. J-5), wherein although the Union is denominated as "the lessors (*sic*)," it is recognized as "the authorized representatives of the drivers or taxi operators of this company." (Tr. Ev. p. 48.)

The order of the Labor Relations Board of September 30, 1964 will be enforced.