**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CONTINENTAL NUT COMPANY, Respondent.**

**No. 22338.**

United States Court of Appeals
Ninth Circuit.

May 22, 1968.

Rehearing Denied July 8, 1968.

Davison (argued), Arthur A. Horowitz, Attys., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D.C., Roy O. Hoffman, Director, N.L.R. B., San Francisco, Cal., for appellant.

Wesley J. Fastiff (argued) of Littler, Mendelson & Fastiff, Gladstein, Andersen, Leonard & Sibbett, San Francisco, Cal., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and MERRILL and BROWNING, Circuit Judges.

MADDEN, Judge:

The National Labor Relations Board has petitioned this court, pursuant to § 10(e) of the National Labor Relations Act, 29 U.S. Code § 151, et seq., for enforcement by the court of the Board's order directing the respondent, Continental Nut Company, to bargain collectively with Warehousemen's Union, Local 17,

---

5. City of Montgomery, Alabama v. Gilmore, 5th Cir. 1960, 277 F.2d 365, 370;

43 C.J.S. Injunctions § 14; 28 Am.Jur., Injunctions § 35.

International Longshoremen's and Warehousemen's Union, a union of its employees, and to cease and desist from certain other unfair labor practices. The two entities will hereinafter be called the employer and the union.

We narrate the events which led up to the instant appeal to this court. The union filed a petition with the Board pursuant to § 159 of Title 29, United States Code, requesting the Board to certify the union as the sole collective bargaining agent for a certain unit of the company's employees. As not infrequently occurs, the parties entered into a written agreement for a "consent election," instead of going through what is sometimes a rather ponderous hearing at which evidence is taken concerning the jurisdiction of the Board, the appropriate unit of employees to be included in the election if an election is ordered by the Board, and perhaps other pertinent matters. In this case there were no such unresolved problems and the parties, as we have said, agreed that the sentiment of the employees as to whether or not they desired to be represented by the petitioning union might be determined in an election to be conducted by the Board's Regional Director, under the Board's rules applicable to consent elections.

The election agreement, signed by the employer and the union and approved by the Regional Director, was a stereotyped document, the language of which had frequently been used by the Board in similar circumstances. We quote the pertinent parts of the agreement, italicizing some of its language:

1. SECRET BALLOT * * * Said election shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, and the applicable procedures and policies of the Board, provided that the determinations of the Regional Director shall be final and binding *upon any question,* including questions as to the eligibility of voters, raised by any party hereto relating *in any manner to the election* * * *

\* \* \* \* \* \*

## 6. OBJECTIONS, CHALLENGES, REPORTS THEREON

Objections to the conduct of the election or conduct affecting the results of the election, or to a determination based on the results thereof, may be filed with the Regional Director within 5 days after the issuance of the Tally of Ballots * * * The Regional Director shall investigate the matters contained in the objections and issue a report thereon. * * * The method of investigation of objections and challenges, including the question whether a hearing should be held in connection therewith, shall be determined by the Regional Director, whose decision shall be final and binding.

The election took place on October 28, 1966. The union and the employer, both of which had had observers present at the election, signed certificates that the election had been fairly conducted. The votes were counted and there were 90 votes for the union and 73 against it, and two challenged ballots. On November 4 the company filed an objection to the election as the election agreement authorized it to do. The stated ground for the objection was that the union had promised numerous employees that initiation fees would be waived if the union won the election. The Regional Director made a full investigation and, on December 1, 1966, a report, as the election agreement required. He overruled the employer's objection and stated in his report that the union had told employees that initiation fees for all employees would be reduced if the union won the election, and had told them that the union, in the past, had reduced initiation fees when a large group of employees had joined the union at the same time. He stated in his report that the union's promises were not objectionable because the employees understood that any reduction in the initiation fee would apply to all employees who joined the union, rgardless of how any individual employee voted in the election. Having overruled the company's objection, the Regional Director

certified the union as the sole collective bargaining agent.

On December 19, 1966, the union requested the employer to meet with it for the purpose of negotiating a collective bargaining agreement. The employer by letter dated December 28, 1966, refused to enter into collective bargaining negotiations, for the stated reason that it did not believe that the election reflected the free choice of its employees and that the Regional Director's certification was therefore invalid.

The union thereupon filed a "charge" with the Board, which is the proper move on the part of a union which seeks to initiate an unfair labor practice proceeding. It charged that the employer had refused to bargain with it, although it was the certified collective bargaining agent of the employees, and had thereby violated § 8(a) (5) of the Labor Relations Act, 29 U.S. Code § 158(a) (5), which makes an unjustified refusal to bargain an unfair labor practice, and had also, by its refusal to bargain, violated § 8(a) (1) of the Act, 29 U.S. Code § 158(a) (1), which makes interference, restraint or coercion of employees in the exercise of their rights under the Act an unfair labor practice.

The Regional Director issued a "complaint" upon the union's charge, which is the proper next step if the Regional Director regards the charge as well founded. The employer filed its answer to the complaint, denying that it had committed the alleged unfair labor practice, and giving the reason which we have stated hereinbefore for refusing to bargain with the union. The General Counsel made a motion requesting the Board to issue a summary judgment holding that the employer had violated its duty to bargain collectively with the union, and ordering it to bargain. The Board served a notice on the employer to show cause why a summary judgment should not be rendered. The employer responded to this notice, giving the same reason that it had given before for refusing to bargain with the union.

The Board refused to pass upon the merits of the Regional Director's decision, that decision, as we have seen, being that the union's pre-election statements to the employees about a reduction of initiation fees was not, in the circumstances, a valid basis for an objection by the employer to the election. The Board noted that the employer had agreed in the consent election agreement to be bound by the findings and conclusions of the Regional Director on objections to the election. We have quoted the text of the consent election agreement hereinbefore. The Board recognized that an implied exception to the finalty provisions of the agreement would be applicable if the objector alleged and proved that the Regional Director's determinations were arbitrary or capricious. The employer in the instant case did not assert before the Board, nor does it assert here, that the Regional Director in making his determination was arbitrary or capricious or that his determination was not in conformity with the Board policies or the provisions of the Act. In N.L.R.B. v. Hood Corporation, 346 F.2d 1020, 1022–1023, this court held that in such circumstances the Regional Director's determination, made pursuant to a consent election agreement comparable to the one involved in the instant case, cannot be overturned by a court. See also N.L.R.B. v. Cadillac Steel Products Corp., 355 F.2d 191, 192 (CA 9); N.L.R.B. v. Sumner Sand and Gravel Co., 293 F.2d 754, 755 (CA 9); N.L.R.B. v. Carlton Wood Products Co., 201 F.2d 863, 867, 36 A.L.R. 2d 1170 (CA 9). The purpose of the courts in refraining from reviewing determinations made by Regional Directors on objections to Labor Board elections is discussed in N.L.R.B. v. J. W. Rex Co., 243 F.2d 356, 358 (CA 3). That purpose is, of course, to provide for the final settlement without delay of disputes concerning objections to such elections. When the parties have, as in the instant case, entered into a consent election agreement, they have done so for the purpose expressed by the court in the Rex case.

The language of the consent election agreement, quoted supra herein, is comprehensive. It gives to the Regional Director the power to make a final and binding determination "upon any question * * * raised by any party hereto relating in any manner to the election." The employer, seeking to narrow the powers of the Regional Director, quotes language of this court in the case of N.L.R.B. v. Hood Corporation, 346 F.2d 1020, 1022, as follows:

> It is well settled that where a consent agreement is entered into providing that the determination of the Regional Director on any question shall be final and binding, the procedural and substantive determinations thereafter made by the Regional Director can be successfully challenged only by a showing that they are arbitrary or capricious or not in conformity with the National Labor Relations Board policies or the provisions of the Act.

The employer would read the words "procedural and substantive" as a commendable example of meticulous care by this court to refrain from saying more than it intended to say. It would read the words "procedural and substantive" as words of limitation, rather than words of grant. Its theory is that its objection is based upon a question of fact decided erroneously by the Regional Director and that questions of fact are not included within this court's language, "procedural and substantive," used in the Hood case. This proposed reading is a notable example of looking at the bright side of the subject under scrutiny. But the words will not bear the suggested interpretation. When a tribunal has the power to finally decide the procedural and substantive questions involved in a case, it has the power to decide the case, or, as the consent election agreement said, "any question * * * relating in any manner" to the case.

That the employer had refused to bargain was undisputed. Its asserted justification for the refusal was without merit. Its refusal interfered with, re-strained, and coerced the union in the exercise of its rights under the Act. The employer thus violated §§ 8(a) (5) and (1) of the Act. Full enforcement of the Board's order is granted.