NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

J. W. REX COMPANY, Respondent.

No. 12019.

United States Court of Appeals
Third Circuit.

Argued Feb. 4, 1957.

Decided April 10, 1957.

William J. Avrutis, Washington, D. C. (Theophil C. Kammholz, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Samuel M. Singer, Attys., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Robert H. Kleeb, Philadelphia, Pa., for respondent.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

This is a petition by the National Labor Relations Board filed pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160(e). It seeks enforcement of the Board's order of March 13, 1956, requiring respondent J. W. Rex Company to bargain with a designated union as the representative of respondent's production and maintenance employees. The company resists enforcement of the order upon two principal grounds. First, it is contended that the Regional Director's decision on challenged ballots cast in a consent election was arbitrary and capricious in that the Director filed his report on the basis of an *ex parte* investigation, refusing to grant a hearing. Second, it is argued that in any event a merger of respondent company with three smaller firms, occurring after the refusal to bargain, had rendered the original bargaining unit inappropriate. No question of jurisdiction or commerce is involved.

The Board approved a consent election agreement entered into by the union and respondent company on February 2, 1955. This agreement provided that the appropriate collective bargaining unit would be composed of all production and maintenance employees; it excluded certain specified groups. The parties agreed that

" * * * the determination of the Regional Director shall be final and binding upon any question, including questions as to the eligibility of voters, raised by any party hereto relating in any manner to the election * * *."

The agreement also provided:

" * * * If the challenges are determinative of the results of the election, the Regional Director shall investigate the challenges and issue a report thereon. The method of investigation of objections and challenges, *including the question whether a hearing should be held in connection therewith, shall be determined by the Regional Director, whose decision shall be final and binding.*" Emphasis supplied.

The election was held on February 10, 1955. The results showed 31 votes for the union and 27 against it. Five ballots were challenged. After an *ex parte* investigation of the status of the five employees in question, the Regional Director issued his Report on Challenged Ballots and Certification of Representatives on March 16, 1955. In that report, three of the challenges were sustained on the determination that the employees were supervisors. The other two were overruled, but since these votes could not affect the outcome of the election, it was ordered that the ballots remain unopened. The union was thereupon certified as the bargaining agent for the employees of

the J. W. Rex Company in the unit stipulated in the consent election agreement.

On April 7, 1955, the union requested to bargain with the company. However, since the company was dissatisfied with the Regional Director's rulings on the challenged ballots, its representatives refused to meet with the union. Another meeting was requested by the union on April 13, 1955, and again the company declined. On April 22, 1955, the union filed the customary charge with the Board, complaining of the refusal to bargain.

■■ The first defense upon which the company resists enforcement of the order is that its refusal to bargain was justified in view of the fact that the Regional Director denied a formal hearing on the election challenges, thereby rendering the union certification invalid. This first defense need not long detain us. In the consent election agreement, the respondent company acceded to the position that all of the Regional Director's decisions concerning the election were to be final, including the decision of whether a formal hearing would be necessary in the determination of the challenged ballots. A consent election stipulation that the Regional Director's decisions shall be final places a restrictive limitation upon our power to review. His decision made under such an agreement must be sustained unless it is arbitrary or capricious, or not in conformity with the policies of the Board or the requirements of the Act. National Labor Relations Board v. General Armature & Mfg. Co., 3 Cir., 1951, 192 F.2d 316, 317 note 1, certiorari denied 1952, 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357; National Labor Relations Board v. Carlton Wood Products Co., 9 Cir., 1953, 201 F.2d 863, 866, 36 A.L.R. 2d 1170; Semi-Steel Casting Co. of St. Louis v. National Labor Relations Board, 8 Cir., 160 F.2d 388, 391, certiorari denied, 1947, 332 U.S. 758, 68 S.Ct. 57, 92 L.Ed. 344, see also Annotation, 36 A.L. R.2d 1177 (1954). The company contends that since the facts concerning the challenged ballots were in dispute and the considerations close, the Regional Director should have ordered a formal hearing, and his refusal to do so constituted arbitrary and capricious action. We do not agree. Implicit in the position of the Regional Director is the fact that his work involves making decisions. The normal course of human behavior requires that some of these decisions be made upon an investigation of disputed facts. The Regional Director would hardly need to be an expert in his field if every decision he made were obvious and based upon an agreed factual situation. The respondent company supports its allegation of arbitrary action by seeking to demonstrate that the Regional Director's decisions on the challenged ballots were erroneous. But something more than error is necessary to spell out arbitrary or capricious action. National Labor Relations Board v. Volney Felt Mills, Inc., 6 Cir., 1954, 210 F.2d 559, 560. The company seems to rely on National Labor Relations Board v. Sidran, 5 Cir., 1950, 181 F.2d 671, as holding that the refusal to grant a hearing where the challenged votes might affect the election result is arbitrary and capricious. It must be noted, however, that the Sidran case involved a consent election agreement which did not state expressly that the Regional Director's decision on whether a hearing should be held was to be final. See National Labor Relations Board v. Saxe-Glassman Shoe Corp., 1 Cir., 1953, 201 F.2d 238, 241. The specific attribute of finality accorded the Regional Director's view on whether a hearing should be held distinguishes this consent election agreement from the one involved in Sidran.

■ The National Labor Relations Act provides that nothing contained therein "shall be construed to prohibit the waiving of hearings by stipulation for the purpose of a consent election in conformity with regulations and rules of decision of the Board." § 9(c) (4), 29 U.S.C.A. § 159(c) (4); 29 Code Fed. Regs. § 102.54 (1956 Supp.). Respondent company specifically waived its right to a hearing. It will not now be heard to complain that it should have been given

a hearing simply because the Regional Director's opinion conflicted with its view. We find nothing arbitrary or capricious in his refusal to grant a formal hearing.

The company argues in the alternative that even if the union were properly certified, nonetheless its refusal to bargain was justified on the ground that a merger with three smaller firms subsequent to its refusal to bargain now renders the original unit inappropriate for bargaining purposes.

The J. W. Rex Company had two departments prior to the merger; one involved the heat treatment of metals, and the other produced ordnance items for the armed forces. Painting, chemical processing of metals, and plating work were delegated to outside firms. It was three such firms that merged with the J. W. Rex Company on May 16, 1955. The merger added 29 employees to the production and maintenance group of the new J. W. Rex Company.

After its refusal prior to the merger to bargain with the certified agent of the original unit, the respondent company then, after the merger, pursued a second procedure designed again to postpone the beginning of collective bargaining. It moved the Board on June 22, 1955, to revoke the union's certification upon the ground that the merger added new operations which made the original unit inappropriate, and new employees which meant that the union no longer represented the majority in the expanded unit. The Board denied the motion on August 1, 1955, without opinion. On August 3, 1955, the General Counsel's complaint was served on the company, alleging the refusal to bargain and meet with the union as unfair labor practices within the meaning of Section 8(a) (1) and (5) of the Act. 29 U.S.C.A. § 158(a) (1) and (5).

■ The company's answer applicable to the appropriateness of the unit after the merger involved two aspects. First, it was alleged that the surviving corporation was not responsible for its prede-

cessor's unfair labor practices. This argument seems to have been abandoned by respondent on appeal, and we think rightly so. A mere change of employers, under the circumstances present in this case, is no defense to a charge of refusal to bargain. National Labor Relations Board v. Baldwin Locomotive Works, 3 Cir., 1942, 128 F.2d 39, 43.

The second aspect of the allegation of the unit's inappropriateness is that the merger two months after the certification created such changed conditions in both the number of employees and the type of operations that the original unit could no longer exist. At the time of the hearing on the charge, the Board had already passed upon the appropriateness of the unit when it denied respondent's motion to revoke the certification by its order of August 1, 1955. There it considered the points urged here and decided adversely to the company. Nevertheless, the trial examiner permitted evidence concerning the merger so that the company might have a full record upon which to urge reconsideration here. Again the Board determined that the original unit stipulated in the consent election agreement remained appropriate, and the merger was merely an accretion to it in no way affecting its appropriateness.

■■ The question of unit determination is one within the particular expertise of the National Labor Relations Board, vested in that body by Section 9(b) of the Act. 29 U.S.C.A. § 159(b). "It involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed." Packard Motor Car Co. v. National Labor Relations Board, 1947, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040. The area for judicial review here is extremely limited. It is not this court's function to weigh the evidence before the Board with the view of overruling the exercise of its discretion and displacing its opinion with ours, but simply to "guarantee against arbitrary action by the Board." May Department Stores Co. v. National Labor Relations Board, 1945, 326 U.S. 376, 380, 66 S.Ct.

203, 206, 90 L.Ed. 145; National Labor Relations Board v. Botany Worsted Mills, 3 Cir., 133 F.2d 876, 880, certiorari denied 1943, 319 U.S. 751, 63 S.Ct. 1164, 87 L.Ed. 1705.

■ In the present case, the Board had before it evidence of the corporate structure and the company's operations both before and after the merger. It knew that before the merger, J. W. Rex owned 100% of the common stock of the J. W. Rex Company, and a substantial amount of the stock in the three smaller merged companies. After the merger he owned 75%' of the stock of the surviving corporation. The officers of the company, with one exception, remained the same. The Board was aware that after the merger 29 new production and maintenance employees were added and that new operations were performed by the surviving company. It knew also that all of the new company's employees enjoyed the same benefits under a single personnel and labor relations policy. There were uniform working conditions, seniority benefits, hiring and firing practices, and a uniform wage rate system. Under these circumstances, we are not prepared to say that the Board's decision that the merger resulted merely in an accretion to the existing unit was arbitrary or capricious. Upon an examination of the record, we find substantial evidence to support the Board's conclusion. Considerations which might move the Board to order an election among new employees under other circumstances are not present here. In this case, the employer is asserting the rights of the new employees to justify his refusal to deal with an already certified union and further to postpone collective bargaining. The Supreme Court has said in Brooks v. National Labor Relations Board, 1954, 348 U.S. 96, 103, 75 S.Ct. 176, 181, 99 L.Ed. 125:

" * * * If an employer has doubts about his duty to continue bargaining, it is his responsibility to petition the Board for relief, while continuing to bargain in good faith at least until the Board has given some indication that his claim has merit. Although the Board may, if the facts warrant, revoke a certification or agree not to pursue a charge of an unfair labor practice, these are matters for the Board; they do not justify employer self-help or judicial intervention. The underlying purpose of this statute is industrial peace. To allow employers to rely on employees' rights in refusing to bargain with the formally designated union is not conducive to that end, it is inimical to it."

■ It is essential to note that the merger which respondent company contends rendered the unit inappropriate occurred only two months after certification of the union as bargaining agent. A valid certification is, of course, not intended to be a permanent relationship irrespective of changed conditions. But an employer cannot rely on the changes to justify his refusal to bargain when those changes occur within the certification year, and especially where, as here, the first refusal to bargain occurred before the modification of the unit structure. National Labor Relations Board v. Armato, 7 Cir., 1952, 199 F.2d 800, 803. The court in National Labor Relations Board v. Prudential Insurance Co., 6 Cir., 1946, 154 F.2d 385, 389, elaborated the rationale of this principle:

" * * * A contrary rule to the effect that materially changed conditions, regardless of how soon they occur, must immediately be recognized and translated into orders by the Board would, as was said in National Labor Relations Board v. Botany Worsted Mills, supra, 133 F.2d at page 881, 'make chaos out of the administration of the statute and prevent the protection of the very rights which it aimed to secure.' A bargaining relationship once rightfully established should be permitted to exist and function for a reasonable period during which it can be given a fair chance to succeed. Since the Act does not prescribe the length of time for which any certification shall remain valid, it has been held

that an employer must recognize a certification rightfully given for a reasonable period of time, regardless of materially changed conditions. 'After such a reasonable period the Board may, in a proper proceeding and upon a proper showing, take steps in recognition of changed situations which might make appropriate changed bargaining relationships.' Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 705, 706, 64 S.Ct. 817, 819, 88 L.Ed. 1020 * * *."

The Board's determination that the reasonable period is one year was later given judicial sanction in Brooks v. National Labor Relations Board, 1954, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125.

We have examined the other points raised by respondent and find that they are without merit.

The Board's order as prayed for in its petition will be enforced.