**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FRANK C. VARNEY CO., Inc.**

No. 15579.

United States Court of Appeals Third Circuit.

Argued Feb. 24, 1966.

Decided March 24, 1966.

Elliott Moore, National Labor Relations Board, Washington, D. C. (Arnold

Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., on the brief), for petitioner.

Hugh P. Husband, Jr., New York City, for respondent.

Before HASTIE and SMITH, Circuit Judges, and KIRKPATRICK, District Judge.

HASTIE, Circuit Judge.

In this case we are asked to enforce an order of the National Labor Relations Board which accords bargaining rights to a labor union.

The controversy involves a small plant and a group of eight workers. For a long time management successfully, and apparently lawfully, opposed unionization. However, in the summer of 1963, the union advised management that seven of the eight employees had elected to be represented by it and presented signed union application cards in token of that fact. The eighth employee signed shortly thereafter. In the immediately ensuing discussions, apparently preliminary to bargaining, management expressed no doubt and demanded no further proof concerning the unionization of its employees. However, three days later, the employer requested the Board to conduct an election on the question of representation. Shortly thereafter, the union consented to such an election.

The union and the employer conducted vigorous campaigns for and against union representation during the weeks immediately preceding the election. Most of the things said and done were lawful. However, the Board has found that two conversations of the proprietor, each with a separate employee, amounted to "coercive interrogation" and "a promise of benefit" in return for deserting the union. We think the evidence concerning these conversations warrants the finding that they constituted unfair labor practices.

The employer urges that even though these incidents might disclose technical illegality, their significance was de minimis and that its vigorous and persuasive lawful campaign was responsible for the subsequent outcome of the election. However, we find no sufficient basis for overriding the Board's judgment that, in a small unit of eight employees, these two episodes may well have influenced the outcome of the subsequent election. Actually, the election resulted in a tie vote of four to four. Thus, if even one employee was improperly induced to desert the union, the union's loss of majority status was unlawfully brought about.

It remains to consider whether it was permissible in the circumstances of this case for the Board to accord bargaining rights to the union after it failed to win an election rather than to direct a new election to determine whether the union should be certified. The Board found that the employer did not have a good faith doubt that its employees had properly chosen union representation when it refused to bargain with the union and instead sought an election. Here again on the entire record we think there is adequate support for the Board's conclusion. Cf. NLRB v. Barney's Supercenter, Inc., 3d Cir., 1961, 296 F.2d 91; NLRB v. Epstein, 3d Cir., 1953, 203 F.2d 482. But beyond that the question remains whether the union's consent to an election and its failure thereafter to win that election should have caused the Board to refuse to grant the union immediate bargaining status and instead to order a new election, hopefully untainted by any unfair labor practice. For a time, the Board treated union acquiescence in an election, despite its awareness that the employer's refusal to accord it bargaining status without an election was unjustified, as a waiver of its right thereafter to seek relief from the original unfair denial of bargaining status, if it should lose an unfairly influenced election. Aiello Farms, 1954, 110 NLRB 1365. But the Board has now reversed its position. Bernel Foam Products Co., 1964, 146 NLRB 1277. We think the Bernel decision is soundly reasoned and was properly followed in the

bargaining order in this case. Accord, Irving Air Chute Co. v. NLRB, 2d Cir., 1965, 350 F.2d 176; Colson Corp. v. NLRB, 8th Cir., 1965, 347 F.2d 128.

Finally, the employer urges that only an election as contrasted with an order giving the union bargaining rights at this time, can effectuate the purposes of the act. The Board thought otherwise and we cannot say that the Board was clearly wrong. Of course the present granting of bargaining rights does not preclude the possibility of a representation election as circumstances may warrant in the not too distant future.

A decree will be entered enforcing the order of the Board.