**DWIGHT–EUBANK RAMBLER, INC., d/b/a Al Ortale Rambler, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 20285.**

United States Court of Appeals
Ninth Circuit.

June 23, 1967.

H. Burdette Fredricks, Los Angeles, Cal., for appellant.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, Gregory L. Hellrung, Attys., NLRB, Washington, D. C., Ralph Kennedy, Regional Director, NLRB, Los Angeles, Cal., for respondent.

Before HAMLEY and JERTBERG, Circuit Judges, and WHELAN, District Judge.

HAMLEY, Circuit Judge:

Dwight-Eubank Rambler, Inc., d/b/a Al Ortale Rambler (Dwight-Eubank), petitions for a review of a cease and desist order entered against it on June 11, 1965, by the National Labor Relations Board. The Board cross-petitions for enforcement of its order. The Board's decision and order are reported at 152 NLRB 1433. The sole question presented is a procedural one arising from the fact that a Board file containing statements and affidavits of prospective witnesses, and other documents, had been lost and was not available at the time of the agency hearing.

In November and December, 1963, International Association of Machinists (AFL-CIO) (Union) filed with the Board's regional office in Los Angeles, unfair labor practice charges against Dwight-Eubank. Board attorneys employed in the regional office conducted an investigation during which a number of individuals were interviewed. Sworn affidavits or signed statements were made in the course of these interviews and placed in the Board's regional office file.

Sometime between mid-January and mid-February, 1964, this file was forwarded to the General Counsel's office in Washington, D. C. A few weeks later the regional office was notified by the Board's Washington office that, despite an exhaustive search, the file could not be found.[1]

Thereafter, on March 24, 1964, the regional office instituted this agency proceeding by filing with the Board a complaint against Dwight-Eubank. In this complaint, Dwight-Eubank was charged with engaging in a variety of unfair labor practices in violation of section 8(a) (1), (3) and (5) of the National Labor Relations Act (Act), 49 Stat. 452 (1935), as amended, 29 U.S.C. § 158(a) (1), (3) and (5) (1964).

Prior to the hearing there was a conference between counsel for Dwight-Eubank and members of the general coun-

---

1. In addition to the original affidavits and statements of witnesses offered by the general · counsel, certain authorization cards in which employees of Dwight-Eu- bank had purportedly indicated their wish to be represented by the Union, could not be produced because they were in the lost file.

sel's staff, presumably to determine if the case could be settled. Neither at that conference nor at any other time prior to the hearing, was Dwight-Eubank advised that the Board file had been lost. This information was made known to Dwight-Eubank for the first time in an announcement by counsel for the general counsel at the outset of the hearing.

Upon learning that the Board file had been lost, counsel for Dwight-Eubank immediately moved to dismiss the proceeding. He did so on the following grounds: (1) because the regional office file had been lost, the Government was not ready to proceed, (2) Dwight-Eubank could not prepare its case, (3) the regional director of the Board must have made his decision to institute the proceeding without reference to the evidence obtained during the investigation and therefore acted arbitrarily, and (4) since Dwight-Eubank had not been advised of the lost file at the time of the pre-hearing conference to discuss settlement, the company did not have a fair conference. The motion was denied.

At the agency hearing, counsel for Dwight-Eubank requested production of the pretrial statements of seven of the general counsel's witnesses, namely: Charles Edwards, Barnard Paradis, Terry Friesner, Robert Shephard, Fred Reynolds, Roscoe Sloan and Allen Buell. Each of these witnesses had given the general counsel a pre-hearing written statement or affidavit but, because the regional office file had been lost, counsel for the general counsel was unable to supply the originals of any of these statements or affidavits.

However, counsel for the general counsel tendered what he stated to be carbon copies of all such statements and affidavits, except for Edward's affidavit of November 22, 1963, and a second affidavit of the same date from Buell. Counsel explained that there were no known copies of these two latter affidavits. In their place, however, counsel produced subsequent affidavits of Buell and Edwards, dated March 10, 1964 and March 13, 1964, respectively.

In conducting his cross-examination of five of these seven witnesses, counsel for Dwight-Eubank inquired about the truth of assertions contained in their pretrial statements. He also made detailed references to the alleged carbon copies of the original statements and affidavits which had been submitted by counsel for the general counsel. The witnesses so questioned confirmed that they had made the statements referred to in these copies.

At various times throughout the hearing, counsel for Dwight-Eubank renewed his motion to dismiss the proceeding; moved to strike the testimony of witnesses whose original statement or affidavit could not be produced; and objected to allowing counsel for the Board use of oral testimony as a form of secondary evidence, to substitute for the original authorization cards which had been lost with the Board file.

All of these motions were denied. The trial examiner found and concluded that, in violation of section 8(a) (5) and (1) of the Act, Dwight-Eubank had refused to bargain with the Union; in violation of section 8(a) (3) and (1), it had discharged three employees in order to discourage union membership; and in violation of section 8(a) (1), management personnel had made statements which interfered with, restrained and coerced employees in the exercise of rights guaranteed by section 7 of the Act. The trial examiner recommended that the usual cease and desist order be entered and that the company be required to reinstate the three unlawfully discharged employees with back pay. On agency review, the Board sustained the trial examiner's procedural rulings, and adopted his findings, conclusions and recommendations on the merits, with certain modifications and additions not here relevant.

This review proceeding was instituted by Dwight-Eubank on August 3, 1965. On August 29, 1966, which was almost three months before Dwight-Eubank filed its opening brief with this court, the Board lodged with this court the affidavit of Paul A. Cassady, region-

al director of the Board's region 31, and two Board files. Cassady stated in this affidavit that the lost regional file had been found in the Board's Washington, D. C. files in July, 1966.

One of the files lodged with this court, accompanying the Cassady affidavit, contains what the general counsel's office asserts are all the original statements and affidavits of the witnesses contained in the regional office file. The other Board file lodged with this court at that time contains what the general counsel's office asserts are all the documents actually tendered to Dwight-Eubank at the agency hearing. The Board advises us in its answering brief on this review that at the time these documents were submitted to this court, Xerox copies of all of them were served upon Dwight-Eubank.

In its opening brief filed in this court on November 23, 1966, the only question raised by Dwight-Eubank was whether the Board had committed error in denying the company's procedural motions with reference to the lost regional office file.

The company's very brief argument on this point refers only to the matter of the witnesses' statements, no argument being directed to the loss of certain authorization cards. No contention was made in this court that Dwight-Eubank had been prejudiced by the loss of the regional file. Dwight-Eubank's opening brief (no reply brief was filed) makes no attack upon the Board's findings and conclusions on the merits, nor upon the remedy prescribed.

Dwight-Eubank's brief does not mention that the Board file has since been found and that the company has been afforded an opportunity to determine whether the originals of the statements and affidavits in question conformed to the copies which had been supplied to them at the hearing. The company has

not requested the court to remand with directions to reopen the Board hearing, nor has it moved in this court to adduce additional evidence. Dwight-Eubank does not contend in its brief that the previously-missing documents differ in any respect from the copies actually delivered to Dwight-Eubank's counsel at the agency hearing.[2]

We will first consider the procedural problems as they were presented at the hearing before the trial examiner. There was then no contention that the file had not actually been lost, nor apparently any demand for an explanation or showing, beyond that provided by the statement of counsel for the general counsel, as to how it was lost and what effort had been made to find it. It was there argued that Dwight-Eubank had not had a fair pre-hearing settlement conference, and had been unable to prepare its case properly because it was not advised prior to the hearing that the file had been lost.

We are unable to perceive how Dwight-Eubank could have been prejudiced by this circumstance. The Board had copies of almost all the documents which were in the lost file. Presumably the Board still hoped to find the file before the hearing began. When the hearing did begin, counsel for the general counsel promptly announced the loss and gave a full explanation.

Two of the grounds relied upon by Dwight-Eubank in its motion in the agency hearing to dismiss the proceeding were that, because of the loss of the file, the Government was not ready to proceed, and the regional director must have made his decision to institute the proceeding without reference to the evidence obtained during the investigation and therefore acted arbitrarily. Dwight-Eubank could not have been prejudiced, however, if the Government was not ready to proceed, and the regional director had most of the evidence in the

2. At the oral argument before this court counsel for Dwight-Eubank, whose office is in Los Angeles, pointed out that the recovered regional file was lodged with this court in San Francisco, and that Dwight-Eubank's counsel was supplied only with Xerox copies of the originals.

form of carbon copies of statements, together with the prospective live testimony of Board witnesses.

■ It was Dwight-Eubank's right to inspect and use, for purposes of cross-examination, written statements made prior to the hearing by witnesses called by counsel for the general counsel.[3] The language of section 102.118 of the Board's Rules and Regulations, quoted in the margin, would ordinarily require the Board to produce the originals of such statements.[4]

■ However, where original statements have been lost or destroyed and no bad faith or prejudice has been shown, as is the case here, testimony of the witnesses concerned need not be stricken because original statements cannot be produced. This would be true even where purported copies could not be supplied. Here, however, purported carbon copies were supplied to Dwight-Eubank for all but two earlier statements. See Killian v. United States, 368 U.S. 231, 239–243, 82 S.Ct. 302, 7 L.Ed.2d 256; N.L.R.B. v. Seine and Line Fishermen's Union of San Pedro, 9 Cir., 374 F.2d 974, decided January 6, 1967.

It follows that if the regional office file had not been found, we would affirm.

■ The Cassady affidavit and the two additional files lodged with this court after this review was instituted, and statements concerning the finding of the file and the effort made to bring that development to the attention of the company, contained in the Board's brief, are not in the record on review. Thus, none of this information is properly before us and we are warranted in disregarding it entirely, resting our decision exclusively on the Board record which calls for affirmance.

The Board is nevertheless to be commended in bringing this new information to the attention of Dwight-Eubank and this court. It provided an opportunity for Dwight-Eubank to seek a remand for the purpose of exploring any possible prejudice thereby disclosed. However, the company has sought no such remand and does not now contend that examination of the original file discloses prejudicial discrepancies between documents therein contained and copies produced at the hearing.

The observation made by Dwight-Eubank's counsel during oral argument, that it has had no opportunity to compare the original documents with the alleged carbon copies because the originals were lodged with the court in San Francisco, cannot be taken seriously. If counsel really thought the Xerox copies of the originals, supplied to them, were not true copies, he could either have sent someone to San Francisco to make a comparison, or requested this court to transfer the file to the clerk of the United States District Court in Los Angeles so that this could be done.

On Dwight-Eubank's petition the Board order is affirmed. On the Board's cross-petition, the Board order will be enforced.

3. Section 102.118 of the Board's Rules and Regulations, 29 C.F.R. § 102.118 (1964); Harvey Aluminum (Incorporated) v. N.L.R.B., 9 Cir., 335 F.2d 749, 753; Ra-Rich Mfg. Corp., 121 N.L.R.B. 700.

4. Section 102.118 provides in pertinent part:
"After a witness called by the general counsel has testified in a hearing upon a complaint under section 10(c) of the act, the respondent may move for the production of any statement of such witness in possession of the general counsel, if such statement has been reduced to writing and signed or otherwise approved or adopted by the witness. Such motion shall be granted by the trial examiner. If the general counsel declines to furnish the statement, the testimony of the witness shall be stricken." 29 C.F.R. § 102.118 (1964).