Roberto G. **CHAVARRY**, Regional Director for Region 24 of the National Labor Relations Board, for and on behalf of the **NATIONAL LABOR RELATIONS BOARD**, Petitioner,

**and**

INNOVATIVE COMMUNICATIONS CORP., Virgin Islands Telephone Co., and St. Croix Cable T.V., Inc., Respondents.

No. CIV 2000–168.

District Court, Virgin Islands, D. St. Thomas.

Sept. 14, 2000.

Angel A. Valencia–Aponte, Lourdes Vanessa Garcia, San Juan, PR, for petitioner.

Joel H. Holt, Holt & Russell, St. Croix, VI, Jeffrey F. Fraser, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, MI, for respondents.

## MEMORANDUM

MOORE, District Judge.

Roberto G. Chavarry, Regional Director for Region 24 of the National Labor Relations Board, for and on behalf of the National Labor Relations Board ["petitioner" or "NLRB"], has petitioned the Court for a preliminary injunction to enjoin Innovative Communications Corporation ["ICC"], Virgin Islands Telephone Company ["Vitelco"], and St. Croix Cable T.V., Inc. ["St. Croix Cable"], collectively, the respondents, from engaging in unfair labor practices. The NLRB seeks this relief pursuant to section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j).

## I. FACTUAL BACKGROUND

Underlying this dispute is the ongoing reorganization of the subsidiaries of ICC. ICC is the parent corporation of five subsidiaries: Vitelco, St. Croix Cable, St. Thomas/St. John Cable, Vitel Cellular, and Vitelcom.[1] In 1998, ICC made a business decision to consolidate the job functions of all of its subsidiaries with the goal of providing "one stop shopping" to its customers. To achieve this consolidation of job functions, ICC began a process of cross training so that each employee could provide service for any telecommunication client need, e.g., telephone, cable, cellular, etc. To date, some employees of the ICC subsidiaries have been cross trained, including some but not all of the St. Croix

---

1. During the times relevant to this dispute and at present, Vitelco has 257 employees; St. Croix Cable has 24 employees; St. Thomas/St. John Cable has 15 employees; Vitel Cellular has 9 employees; and Vitelcom has 7 employees.

Cable employees. The respondents contend that the St. Croix Cable employees will be fully cross trained by September 25, 2000. ICC's reorganization plan also calls for the relocation of the different subsidiaries into one central location at new corporate offices to be built in the Sunny Isle shopping center in St. Croix. As of this date, the new facility is still under construction with an expected completion date of October 15, 2000. When the facility is completed, the respondents expect to relocate all employees designated as "inside" employees from the five subsidiaries to the Sunny Isle location. "Outside" employees from all subsidiaries will work together at what is currently the Vitelco warehouse facility in Mount Pleasant, St. Croix. The respondents have stated that all "outside" employees from St. Croix Cable have already moved to the Mount Pleasant facility.

Since 1972, Vitelco and the United Steel Workers of America ["USWA"] have maintained a lawful collective bargaining agreement. The remaining four subsidiaries of ICC were not unionized. Beginning in early 1998 and continuing through most of 1999, Vitelco and the USWA conducted negotiations concerning the consolidation of job functions. On August 27, 1999, Our Virgin Islands Labor Union ["OVILU"] filed a petition before the NLRB to represent the St. Croix Cable employees. On August 30th, the USWA requested that the NLRB allow the USWA to be placed on the ballot as an intervenor in the election. The president of OVILU, Terrence Nelson, the general manager of St. Croix Cable, and the Sub-district Director of the USWA subsequently signed a stipulated election agreement permitting the USWA to participate. The election was held on September 22, 1999, with OVILU receiving all twenty-four votes from the St. Croix Cable employees; the USWA did not receive any votes.

On the very same day as the election, Vitelco and the USWA reached an agreement concerning all aspects of the consolidation of job functions. Following ratification by the USWA membership, the contract incorporating this agreement became effective on October 1, 1999. As of October 1st, the respondents recognized the USWA as the exclusive collective bargaining representative of the St. Croix Cable employees and began applying the terms and conditions of the newly adopted Vitelco–USWA contract to these employees. This resulted in the following changes to the St. Croix Cable employees' terms and conditions of employment: (1) an increase in wages and benefits; (2) the loss of a Christmas bonus; (3) the loss of employer contributions to a 401(k) plan; and (4) the loss of a cable television service subsidy. Additionally, and perhaps most importantly, the new contract credited the St. Croix Cable employees with only one year of seniority for every three years of service, and provides that, in the event of lay offs, St. Croix Cable employees will be laid off before Vitelco employees.

On October 5, 1999, the NLRB certified OVILU as the exclusive collective bargaining representative of the St. Croix Cable employees. The employees of St. Croix Cable complained to OVILU at an October 16th meeting with Vitelco that union dues for the USWA were being withheld from their paychecks. Vitelco told the employees and OVILU that this was a mistake and that the dues paid would be held in an escrow account. On November 3, 1999, OVILU submitted to St. Croix Cable dues check off forms for distribution to the employees. OVILU has never received dues from these employees. In mid-November, however, an ICC representative advised the St. Croix Cable employees that the Vitelco–USWA collective bargaining agree-

ment required them to sign the dues check off forms for the USWA. The employees, believing that they would lose their jobs if they failed to comply, signed the USWA dues check off forms.

OVILU filed a charge of unfair labor practice with the NLRB on October 15, 1999. The NLRB issued a complaint and notice of hearing on April 24, 2000, alleging that the respondents are rendering unlawful assistance to the USWA, are discouraging membership in OVILU by discriminating in regard to terms and conditions of employment, and are refusing to recognize and bargain collectively with OVILU. The NLRB's complaint is pending before the Honorable C. Richard Miserendino, an Administrative Law Judge of the NLRB. The parties currently are awaiting a decision from Judge Miserendino. The NLRB seeks a preliminary injunction to end what it views as unfair labor practices pending resolution of the matter through the administrative processes of the NLRB.

## II. DISCUSSION

In deciding whether to grant injunctive relief pursuant to section 10(j) of the National Labor Relations Act, the Court must determine (1) "whether there is reasonable cause to believe that an unfair labor practice has occurred"; and (2) "whether an injunction would be just and proper." *Pascarell v. Vibra Screw, Inc.*, 904 F.2d 874, 877 (3d Cir.1990). The Court does not reach the underlying merits of the dispute, as this determination is reserved to the NLRB. *See* 29 U.S.C. § 159(b); *see also National Labor Relations Bd. v. J.W. Rex Co.*, 243 F.2d 356, 359 (3d Cir.1957) (noting that "question of unit determination is one within the particular expertise of the National Labor Relations Board").

The reasonable cause determination involves a two-prong standard, namely, (1) whether there is "a substantial, non-frivolous legal theory, implicit or explicit, in the NLRB's argument"; and (2) whether, construing the facts in the light most favorable to the NLRB, there is "sufficient evidence to support that theory." *Pascarell*, 904 F.2d at 882. The NLRB does not need to prove that a violation of the NLRA has occurred, but only that there is some evidence before the Court that "demonstrat[es] the elements of an unfair labor practice." *Kobell v. Beverly Health & Rehab. Servs., Inc.*, 987 F.Supp. 409, 414 (W.D.Pa.1997). Accordingly, the NLRB's burden in establishing reasonable cause is "'relatively insubstantial.'" *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1084 (3d Cir.1984) (quoting *Hirsch v. Building & Constr. Trades Council*, 530 F.2d 298, 302 (3d Cir.1976)).

The Court has little difficulty in finding reasonable cause to believe that an unfair labor practice has occurred. The NLRB based its petition on the "express statutory prohibitions" set forth in section 8(a) of the NLRA, *see* 29 U.S.C. § 158(a), "which clearly constitute a substantial legal theory." *Pascarell*, 904 F.2d at 882. Furthermore, the facts as alleged by the NLRB and as agreed to by ICC substantially support the NLRB's theory that ICC interfered with the St. Croix Cable employees' rights to organize and refused to bargain collectively with these employees through their chosen representative, OVILU. In fact, the evidence presented to this Court indicates that Vitelco and the USWA unilaterally changed the terms and conditions of employment for the St. Croix Cable workers, without any regard whatsoever for OVILU, the union chosen by the workers to serve as their exclusive

collective bargaining agent.[2] Furthermore, as even the respondents concede, ICC incorrectly withheld USWA dues from the St. Croix Cable employees' paychecks and had these employees sign USWA dues check off forms. The NLRB contends that OVILU's efforts to have the St. Croix Cable employees sign its dues check off forms have been unsuccessful to date. Based on this evidence, the Court finds that the NLRB has established reasonable cause that the respondents have engaged in unfair labor practices.

■ Having found reasonable cause, the Court must decide if it would be just and proper to grant the injunctive relief requested by the NLRB. The key question before the Court is "whether, absent an injunction, the [NLRB's] ability to facilitate peaceful management-labor negotiation will be impaired." *Id.* at 879. This inquiry focuses on whether the NLRB will be able to "vindicate its ultimate remedial power" if it is forced to wait for relief until an adjudication of the case on its merits, or must the Court grant injunctive relief now to ensure that the NLRB's power to act once a decision is rendered by the administrative judge is not dissipated. *Kobell,* 731 F.2d at 1091. Finally, the Court notes that "[u]nless there are circumstances, like the size, intimacy, and longevity of the bargaining unit, which indicate that the bargaining process will not be harmed, courts must be deferential to the Board's determination that the integrity of the process needs interim protection." *Pascarell,* 904 F.2d at 879 n. 7.

■ The Court finds that injunctive relief in this instance is "just and proper." The St. Croix Cable employees elected OVILU as their bargaining representative a little over one week before the respondents imposed representation by the USWA on these same employees. Consequently, OVILU has been shut out of all labor negotiations concerning the St. Croix Cable employees and was never recognized and given a chance to come to the table, let alone serve as the duly elected collective bargaining representative for the employees. As in *Pascarell,* "[t]here is no indication in the record as to how, absent immediate relief, this Local will be able to swiftly and effectively reconstruct itself because, at this point, there is still no Local to speak of ...." *Id.* at 880. Accordingly, and given that the small size and lack of intimacy or longevity of OVILU as the bargaining unit for the St. Croix Cable employees mandates that this Court give great deference to the NLRB's determination that this situation requires interim injunctive relief, the Court finds that immediate injunctive relief is warranted.

■ The final question before the Court is the form of this relief. Pending resolution by the NLRB, the Court must restore or preserve the status quo as it was "right before the alleged unfair labor practices took place." *Id.* at 879 n. 5. Accordingly, the Court must return these parties to their respective positions before the respondents unilaterally imposed the terms of the Vitelco–USWA collective bargaining agreement on the St. Croix Cable employees. To do so, the respondents

---

2. The parties addressed the issue of whether accretion had occurred, by which the St. Croix Cable employees became a part of the larger, existing unit and subject to the Vitelco–USWA collective bargaining agreement. The Court does not reach the issue of determining whether an accretion has occurred, as it is one properly reserved for the NLRB to determine in its administrative proceedings. Regardless of whether an accretion has occurred as of this date, however, it appears certain that an accretion had not occurred when the Vitelco–USWA agreement became effective in October, 1999.

must acknowledge OVILU as the exclusive collective bargaining representative for these employees and negotiate in good faith, not just the "effects" of the attempted transition to USWA representation, but the actual terms and conditions of employment for the St. Croix Cable employees as of the date the respondents applied the Vitelco–USWA collective bargaining agreement to these employees. This will not nullify the agreement between Vitelco and the USWA. The Vitelco–USWA agreement will become applicable to the St. Croix Cable employees only when they are accreted into the larger bargaining unit.

Furthermore, the Court sees no reason why the USWA or Vitelco should be entitled to retain in an escrow account the USWA dues improperly collected from the St. Croix Cable employees. This money rightfully belongs to these employees and should be returned immediately with all accrued interest. Also, as the Vitelco–USWA agreement does not apply to these employees at this time, the USWA dues check off forms signed by the St. Croix Cable employees are invalid. The respondents instead must distribute the forms provided by OVILU and proceed in a manner consistent with OVILU serving as the exclusive collective bargaining representative of these employees.

## III. CONCLUSION

Although the Court readily acknowledges that ICC has the right to reorganize its businesses, these business decisions must be implemented in a manner which does not improperly impinge on the rights of its employees under the federal labor relations laws. Unfortunately, the evidence before the Court demonstrates that ICC, Vitelco, St. Croix Cable T.V., Inc., and the USWA engaged in negotiations and entered an agreement which simply ignored the duly elected exclusive bargaining representative of the St. Croix Cable employees, namely, OVILU. Accordingly,

the Court finds reasonable cause to believe that an unfair labor practice has occurred and that it is just and proper to grant the NLRB injunctive relief pending resolution of this matter through the administrative proceedings of the NLRB. An appropriate order is attached.

## ORDER

For the reasons set forth in the accompanying memorandum of even date, it is hereby

**ORDERED** that the petitioner's request for injunctive relief pursuant to section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), is **GRANTED.** The respondents shall acknowledge Our Virgin Islands Labor Union ["OVILU"] as the exclusive collective bargaining representative for the employees of St. Croix Cable, T.V., Inc., and shall engage in labor negotiations with OVILU accordingly. The respondents and OVILU shall negotiate in good faith, not just the "effects" of the attempted transition to USWA representation, but the actual terms and conditions of employment for the St. Croix Cable employees as of the date the respondents applied the Vitelco–United Steel Workers of America ["USWA"] collective bargaining agreement to these employees. It is further

**ORDERED** that the respondents shall immediately return any monies held in escrow on behalf of the St. Croix Cable employees that were collected as dues payments to the USWA, to the St. Croix Cable employees with any accrued interest. Further, the respondents shall provide to the St. Croix Cable employees the dues check off forms for OVILU and proceed in a manner consistent with OVILU being the exclusive collective bargaining representative for the St. Croix Cable employees. It is further

**ORDERED** that the respondents post copies of this order and the accompanying

memorandum where notices to employees are customarily posted at the facilities where St. Croix Cable employees are working; said posting shall be maintained during the NLRB's administrative proceedings free from all obstructions and defacements; and all St. Croix Cable employees shall have unrestricted access to said postings. The respondent shall grant to agents of the NLRB access to these facilities to monitor compliance with this posting requirement; and shall file with the Court, within twenty days of the date of this order, a sworn affidavit from the responsible official of the respondents, setting forth with specificity the manner in which the respondents have complied with the terms of this order, including where they has posted the documents as required by this order. The respondents shall also serve a copy on the petitioner. It is further

**ORDERED** that this injunctive relief shall remain in effect until the matter currently pending in administrative proceedings of the National Labor Relations Board is fully resolved.